JAMES L. FARMER *v.* CUMBERLAND TELEPHONE & TELEGRAPH
COMPANY.

1. MASTER AND SERVANT. *Runaway horse. Master's knowledge. Servant's injury.*

   A master, having knowledge that a horse is wild and accustomed to run away, who furnished it to a servant ignorant of its character, for use in his service, is liable to the servant for personal injuries resulting from the running away of the animal while in such use.

2. SAME. *Concrete case.*

   Where plaintiff, ignorant of the animal's character, was injured by the viciousness of a horse furnished him for use in his business by his employer, and certain witnesses testified to the viciousness of the horse, and that the employer's manager had knowledge thereof, and had instructed one of the witnesses "to get rid of the horse if he could, to swap her off if he could get anybody to swap, and to give her away before she hurt somebody," the evidence was sufficient to sustain a finding of negligence in furnishing such horse to plaintiff for use; and it was error to direct a vedict for defendant.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Farmer, the appellant, was plaintiff, and the telephone company, the appellee, defendant in the court below. From a judgment in defendant's favor, predicated of a peremptory instruction, the plaintiff appealed to the supreme court.

The evidence for plaintiff was, in substance, as follows: Plaintiff was employed by defendant at Meridian as "trouble man" on its lines, and on the morning of June 4, 1904, he was driving a horse furnished him by defendant, and was going down a hill, when one of the traces came loose and dropped down, and the horse began to run and kick, kicked plaintiff, and broke his knee cap, and threw him out of the wagon. Plaintiff testified that he had worked for defendant as lineman and as trouble

man for several months, and frequently drove other horses owned by defendant, and had driven this one several times, but knew nothing of the vicious character of the horse before the accident. It was shown that one Peavy was the manager of the defendant company. One Henson testified that he knew the habits of the horse; that he had worked for defendant, and had driven the horse; that it would run away every time it got a chance, and "would kick the harness off her;" did so with him several times; liked to have killed him on the street one day; that he asked Peavy several times why he did not get another horse; that Peavy was afraid of her, and had refused several times to ride behind her, and on one occasion walked several miles rather than ride behind her. Charles Patton testified that he knew the character and disposition of the horse; that she was blind, and vicious; would run away and kick up; had known the horse for two years; that Peavy told witness to get rid of the horse if he could; to swap her off if he could get anybody to swap; and to give her away, nearly, before she hurt somebody.

*Ethridge & McBeath*, for appellant.

Unless, from all the testimony, the court would not permit a verdict to stand, the court was in error in granting the instruction. *Whitney* v. *Cook,* 53 Miss., 551; *Railroad Co.* v. *Boehms,* 70 Miss., 11. Before the court would be warranted in giving the instruction here given, it must have found all the facts against appellee—the fact that the mare was a reasonably safe one, and that the appellee was injured by an unavoidable accident, in which appellee was not responsible through negligence by its agent or otherwise; in other words, that the trace coming loose and touching the mare was of such a nature as to cause any reasonably safe animal, under like circumstances, to have run away and kicked. The court must have reached this conclusion. We think this was an invasion of the province of the jury; that this question was for the jury to say whether a reasonably safe animal, under like circumstances, would have acted as this

known dangerous animal did under the circumstances shown by the proof. If we are permitted to take personal experience, we would suggest that no reasonably safe animal would have run away and kicked like this mare did under like circumstances. Jackson and Burnett both say the appellant was doing all he could to stop the mare, both with the lines and by persuasion, and there was nothing to cause her to start to running and kicking except the touch of the trace as it dropped.

This court in the case of *Railroad* v. *Doyle,* 60 Miss., 977, says: "It is only in cases free from doubt that the court will withdraw a case from the jury." Again, in the case of *Bernheim* v. *Dibrell,* 66 Miss., 199, the court says: "Peremptory instruction to find a certain way is improper unless the court, on the evidence, would set aside a contrary verdict." Again, in the case of *Nesbitt* v. *Greenville,* 69 Miss., 22, and *Railroad Co.* v. *Lowe,* the court says: "Where the plaintiff's want of care is relied upon as a defense, unless the evidence of contributory negligence is so plain and convincing as to show that he is debarred thereby of recovery, it is error to give a peremptory instruction for defendant."

*Harris, Powell & Harris,* for appellee.

Under the facts as testified to by the plaintiff himself, if one wished to know the character of this particular horse, who better than the plaintiff was in a position to know her qualities, peculiarities, and characteristics? having her under his control, seeing her daily, hitching her up and driving her during a period of over fifteen months.

Surely he could not be heard to say that he did not know all about this horse. He was in a better position than the master himself to know the peculiarities of the horse, and if he drove her, as he did in this instance, voluntarily, without any coercion, and was injured, even admitting that the injury was due to any inherent viciousness in the mare, he cannot recover. The principles of law governing the case are almost too familiar to re-

quire citation. The rule is based on reason and common sense, that where an employe is dealing constantly and using and in direct contact with the instrumentality for a long time, almost two years, as in this case, he is chargeable with knowledge, and more particularly in this case, when the very instrumentalities are actually under his control. His opportunities for knowledge derived from daily observation and use are better than those of the master.

The principles of law are laid down in 1 Sherman & Redfield on Negligence (4th ed.), 216, as follows: "It may fairly be presumed that a servant knows the condition of the materials, machinery, or appliances which he has constant opportunity to inspect and which his regular duties bring under his notice."

The same principle is laid down in LaBatte on Master and Servant, sec. 406, as follows: "Another way of applying a test of comparison between relative position of masters and servants is exemplified in the case in which servants have been held chargeable with knowledge, for the reason that their means and opportunities of knowing are superior to and better than those of the master. The controlling effect has been ascribed to this conception in cases where the fact emphasized is that the servant had been habitually handling the defective instrumentality or had been constantly brought into close local relations thereto.

The same principle is announced in 1 Bailey on Personal Injuries, from paragraph 776 to 778 inclusive.

The same principle is announced by this court in numerous cases. See *Price* v. *Railroad Co.,* 72 Miss., 862; *Buckner* v. *Railroad Co.,* 72 Miss., 873; *Railroad Co.* v. *Guess,* 74 Miss., 170; *Hatter* v. *Railroad Co.,* 69 Miss., 642.

If the horse was a bad runaway horse, notoriously bad, kicking everything in sight, the plaintiff was bound to know it, and assumed the risk. No one was in a better position to know this fact than he, therefore he could not recover even had the mare run away without provocation.

He cannot recover in this case, because there is no evidence

that the injury complained of was sustained on account of the viciousness of the horse, but was attributable to an accident which was liable to make any horse perform as this one did.

He cannot recover on account of the use of the trace chains, because they were the instrumentalities used by the company when he entered the service, and he continued in the service using the trace chains. They might not have been the safest appliances, but still that would not help the plaintiff out.

He cannot recover if the accident was attributable to the negligence of the negro who hitched the mare up, because that would be the negligence of a fellow-servant.

TRULY, J., delivered the opinion of the court.

This appeal challenges the correctness of the action of the trial judge in granting a peremptory instruction in favor of appellee at the conclusion of appellant's testimony. The rule in such case was recently stated by this court as follows: "It is well settled in our state that, where a peremptory instruction is given, the losing party is entitled, upon the review of the action of the court, to have all facts in his favor considered as true. A peremptory instruction is proper only in cases where, with all the facts in evidence taken as true, with every inference from them, they fail to maintain the issue." *McCaughn* v. *Young,* 85 Miss., 277 (s.c., 37 South. Rep., 839). Tested by that rule, the instant case should have been submitted to the jury. If the testimony of the witnesses Patton and Henson as to the vicious and dangerous disposition of the animal and the knowledge of this fact by the manager of the telephone company be true, and if the testimony of the appellant that he was ignorant of this be likewise true, then this evidence was sufficient to sustain a verdict in favor of appellant. The facts being sworn to positively, the jury should have been permitted to pass upon both the credibility of the witnesses and the probability and reasonableness of their story.

*Reversed and remanded.*