## NOONEY v. PACIFIC EXPRESS CO.†

### (Circuit Court of Appeals, Eighth Circuit.   October 1, 1913.)

### No. 3,880.

1. MASTER AND SERVANT (§ 125*) — INJURIES — FRACTIOUS ANIMAL — KNOWL-
EDGE OF MASTER.
   The rule that a master is not liable for injury caused by the vicious
conduct of a domestic animal in the absence of previous knowledge should
not be applied to injuries sustained by the fright of a young country
horse when subjected to the terrors of a modern city street.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–
251;  Dec. Dig. § 125.*]

2. MASTER AND SERVANT (§ 109*)—INJURIES TO SERVANT—UNBROKEN HORSE
—"INSTRUMENTALITY."
   Where an express company furnished a driver a young country horse,
not city broken, to be driven at a single wagon, the horse was an "instru-
mentality" within the rule that the master is bound to exercise reasonable
care to furnish the servant with reasonably safe instrumentalities with
which to perform the service.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 204;
Dec. Dig. § 109.*]

3. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—UNBROKEN HORSE.
   Defendant express company purchased a country horse six years of
age, and brought him to the city for use in its delivery service.  He was
seriously frightened at street cars and automobiles.  For two days he was
driven double with a city broken horse, when plaintiff was directed to
hitch him to a single wagon and use him in the package delivery serv-
ice.  On the first day the horse behaved badly, and plaintiff reported the
fact to the superintendent, who directed him to try the horse another
day.  On approaching a street car on that day the horse was greatly
frightened, reared on its hind legs so that it nearly fell over backward,
and when it came down kicked with its hind feet, striking plaintiff's ankle
and causing the injury complained of.  *Held*, to justify a finding that
the horse had not been properly broken to city life, and that defendant
was negligent in assigning the horse to plaintiff to drive single.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954,
956–958, 960–969, 971, 972, 977;  Dec. Dig. § 278.*]

4. MASTER AND SERVANT (§ 220*)—INJURIES TO SERVANT—ASSUMED RISK.
   Where plaintiff, after being given a horse to drive in defendant's serv-
ice that was not city broken, explained to defendant superintendent the
misbehavior of the horse, and was directed to try him for one more day,
such direction exonerated plaintiff from assuming the risk of injury while
using the horse during that day.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
625–637, 641, 644–647;  Dec. Dig. § 220.*

   Assumption of risk incident to employment, see note to Chesapeake & O.
R. Co. v. Hennessey, 38 C. C. A. 314.]

   In Error to the District Court of the United States for the Eastern
District of Missouri; David P. Dyer, Judge.

   Action by John Nooney against the Pacific Express Company.
Judgment for defendant, and plaintiff brings error.  Reversed, with
directions.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied December 18, 1913.

Ford W. Thompson, of St. Louis, Mo. (W. B. Thompson, of St. Louis, Mo., on the brief), for plaintiff in error.

Moses N. Sale, of St. Louis, Mo. (J. L. Minnis, of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. The plaintiff was the driver of one of defendant's express wagons in the city of St. Louis. The defendant purchased a horse in the country, six years of age, 16 hands high, weighing about 1,250 pounds. The horse had never been city broke. It was brought to St. Louis in a car, and taken to defendant's barn. On the way to the barn it showed great fear of street cars and automobiles. In accordance with defendant's practice, this horse was first hitched up with an experienced horse, to a double express wagon weighing about 3,300 pounds. It was driven in this way for two days. Then plaintiff was directed by the foreman of the stable to hitch the horse to a single wagon, and use it in the distribution of express matter. As a safeguard the superintendent directed an experienced driver to accompany the plaintiff. On the first day the horse behaved badly, plunging and rearing, sometimes leaping upon the curbing, and at one time nearly leaping into another carriage. Owing to the terror of the horse, whenever possible the plaintiff drove along alleys where street cars and automobiles would not be encountered. Upon returning to the stable about noon of the first day, plaintiff was asked by the superintendent how the horse behaved, and explained to him its behavior. The superintendent then directed the plaintiff to try the horse for another day in company with the same driver. On this day the horse continued to behave badly. When all the parcels had been delivered but the last, the journey led along Laclede avenue, upon which a double street car track is laid. A car was approaching from the opposite direction in which the plaintiff was driving. At the point where he was about to meet the car, there was another horse and wagon standing next to the curbing, so the plaintiff was obliged to swerve out towards the track upon which the car was approaching. The horse was greatly frightened by the car, reared on its hind legs, so that it nearly fell over backward, and when it came down it kicked with its hind feet, striking plaintiff's foot and ankle, producing the injury for which the action was brought. This was the first time that the horse had kicked. The horse was used by the defendant for one more day in a double rig, and then returned to the country. At the conclusion of plaintiff's case showing these facts, the court directed a verdict in favor of defendant, and plaintiff brings error.

[1-3] Defendant contends that this case falls within the ancient rule of the common law that in order to make a master liable for injury, caused by the vicious conduct of a domestic animal, the master must have known of the vicious character of the animal—that every horse is entitled to one kick, the same as every dog is entitled to one bite. The rule had its origin in an agricultural community long before do-

mestic animals were subjected to the contrasts between the quietness of the country and the terrors of a modern city street. It has not for years been looked upon with favor, and we do not think that it should be applied in any field outside of that which is covered by authority. If it were necessary to apply the rule in this case we think there was sufficient evidence to show scienter. The cause of injury was not that the horse was "possessed of an evil propensity and accustomed to attack and injure mankind," according to the formula of the old common law. On the contrary, the conduct of the horse was due to the fact that it had been taken from the quietness of the country and plunged into the terrifying environment of a great city, without proper training, and of the effect of this change upon the horse defendant had abundant knowledge. The case, however, properly falls within a more recent, as well as a more just, rule. The master is required to furnish his servant with reasonably safe instrumentalities with which to perform his service. Here the horse was such an instrumentality in precisely the same sense as the wagon. The duty of the master was to exercise reasonable care to furnish the plaintiff with a reasonably safe horse for the performance of his service; and the whole question is, Was there evidence which made a case that ought to have been sent to the jury to decide whether or not what the defendant did with respect to this horse constituted the exercise of reasonable care? The evidence showed that the horse was a green, country animal, wholly inexperienced in regard to the city. The defendant was bound to know the effect of exposing such a horse to the cars and automobiles of city streets. If such a horse had been given to the plaintiff without any previous testing of its behavior in the city, all would agree that such conduct would have been negligent. The defendant did not do this, but it did place him in charge of a horse which had not been properly broken for single driving; at least, the evidence was sufficient to carry that question to the jury. It was not necessary that defendant should have known that the horse would be guilty of the particular misconduct which resulted in plaintiff's injury. Defendant was bound to know that a green horse, under such circumstances, was likely to do some act which would cause injury to the driver, and among the acts which it had reasonable cause to anticipate was that such a horse, if sufficiently maddened with fright, would kick. We think the jury would have been justified in finding, under the evidence, that the horse had not been properly tried out and broken to city life in the two days' experience with the double wagon, and that the master was not in the exercise of reasonable care when it turned the horse over to the plaintiff for use upon a single wagon. The court, therefore, erred when it disposed of the issue as a question of law.

[4] We do not think the plaintiff assumed the risk of injury from using the horse on the second day, because of his knowledge of its behavior on the first day. He made a full statement of the conduct of the horse to the superintendent, and was directed to try him for one more day. This was tantamount to a complaint with a promise to repair in the case of an ordinary instrumentality. Plaintiff was

not employed as a horse trainer, but as an ordinary driver, and we think the direction of the superintendent, under the circumstances disclosed by the evidence, exonerated plaintiff from assuming the risk of injury from the continued use of the horse.

The judgment is reversed, with directions to grant a new trial.