CENTRAL LUMBER CO. *v.* PORTER.*

(Division B.   April 20, 1925.)

[103 So. 506.   No. 24708.]

1. MASTER AND SERVANT. *Master held liable for injuries to servant by unsafe team.*

In a suit for damages for personal injuries, inflicted by the defendant furnishing to plaintiff unsafe and dangerous teams with which to perform the work, evidence showing that the animal furnished was unsafe and dangerous for the work for which it was used, and that the master had been requested to furnish other teams, and was notified of the dangerous character of the teams furnished, and failed to furnish safe teams, and personal injuries resulted from the use of the unsafe animal in the performance of the work, the master is liable.

2. MASTER AND SERVANT. *Servant continuing to use unsafe teams at master's request does not assume risk.*

In said case it is the duty of the master to furnish the servant with teams reasonably safe for the purpose intended, and, where the master negligently fails to perform this duty, the servant does not assume the risk of his employment if he continues to use such teams at the request of the master.

3. EVIDENCE. *Refusal to permit physician testifying for plaintiff to be cross-examined as to ill will toward defendant held error.*

In a case for personal injury, where the character and extent of the injury was a material subject of inquiry, and a physician, who was a witness for the plaintiff, was introduced and testified to injuries of serious character, it was error to refuse the defendant the privilege of asking such physician, on cross-examination, if he did not have ill will towards defendant, and if he had not been discharged from a position with the defendant and had applied for reinstatement and been refused, and if he had not filed

a personal suit against the defendant, which questions the court refused to have answered on objection by the plaintiff; it was error, as such testimony would tend to show that the witness was not fair and unbiased.

---

*Headnotes 1. Master and Servant, 26 Cyc., p. 1113; 2. Master and Servant, 26 Cyc., p. 1209; 3. Evidence, 22 C. J. Section 813; Witnesses, 40 Cyc., p. 2666.

APPEAL from circuit court of Lincoln county.

HON. E. J. SIMMONS, Judge.

Action by D. T. Porter against the Central Lumber Company. From judgment for plaintiff, defendant appeals. Affirmed in part, and reversed and remanded in part.

*Brady & Dean*, for appellant.

## I.

NEGLIGENCE CANNOT BE PREDICATED ON THE CHARACTER OF WORK ANIMALS, SHORT OF VICIOUSNESS. Appellant submits that a wholly abstract principle which places work animals in a class with machinery and places of work is a wholly unsound principle.

The principle so criticized is widely different from that which announces that the owner of tamed or wild animals kept in captivity shall be responsible for all damage caused by such animals, either from improperly confining them or from their escape, and which holds liable the owners of vicious dogs, stallions, bulls, and animals which do not come in the class of either work animals or wild animals. In the first, inherent propensities, in the other innate characteristics, set them apart in one class, designated as vicious. This would include animals neither naturally wild nor normally vicious, which might develop or manifest vicious traits, as a dangerous dog or fighting horse or goring cow. If any analogy lies between work animals and instrumentalities, then such animals would come in the class of "simple tools." This

court has passed on no case similar to this, and we respectfully submit that in this case the principle applicable is the statement which we have phrased above.

## II.

APPELLEE WAS FURNISHED A REASONABLY SAFE TEAM. Other courts have placed work animals in the class of "instrumentalities." *Smith* v. *Potlatch Lumber Co.,* 22 Idaho, 782, 128 Pac. 546; *Cowan* v. *Hydraulic Press Brick Co.,* 222 S. W. Mo.) 924; *Miller* v. *Blood,* 112 N. E. (N. Y.) 382. If Mississippi follows this principle, then the facts here show that appellant has come well within it, and under the authority of *A. & V. Ry.* v. *White,* 106 Miss 141, 63 So. 345, the peremptory instruction should have been granted.

## III.

EVEN IF IT WERE THOUGHT THAT THE "OFF LEAD" OX WAS UNSATISFACTORY, THERE WAS NEVER A REFUSAL TO REPLACE HIM, BUT A PROMISE TO INVESTIGATE, WHICH PROMISE HAD NOT BEEN BREACHED AT THE TIME OF THE ACCIDENT. It is perfectly apparent that appellee's claim that he was denied the use of a satisfactory team and was forced to use the unsuitable team was but a feeble attempt to twist facts to meet legal necessities.

## IV.

EVEN IF HE DEEMED THE "OFF LEAD" OX UNSUITABLE, APPELLEE, IN CONTINUING TO WORK HIM, ASSUMED ALL RISK OF WHAT MIGHT HAPPEN TO HIMSELF. If appellee considered that there was danger in using the off lead ox under such circumstances, then his act in doing so was a deliberate assumption of responsibility, whose consequences he cannot now escape. The superior training and knowledge of this foreman cannot be separated from any question of liability here. This principle was recog-

nized in the case of *Cowan* v. *Hydraulic Press Brick Co.,* 222 S. W. (Mo.) 924.

Appellee was, as set forth in the statement of facts, a man of mature years, with an experience of twenty-five years behind him, an intelligent man, an ambitious man, studying books in connection with his particular work. In continuing to use the team of oxen containing the "fractious" ox under the circumstances shown in this record, he did so with full knowledge and full assumption of all risk incident thereto, and is, therefore, denied recovery for the injury complained of. See *Arthur* v. *Merchants Ice & Cold Storage Co.,* 161 Pac. (Cal.) 121; *Cooper* v. *Portner Brewing Co.,* 38 S. E. (Ga.) 91; *Arthardt* v. *Consolidated Coal Co.,* 165 Ill. App. 504; *Bowles* v. *Indiana R. Co.,* 62 N. E. (Ind.) 94; *Milbu & D. Coal & Miling Co.* v. *Balla,* 104 S. W. (Ind. Terr.) 860; *East Jellico Coal Co.* v. *Stewart,* 68 S. W. (Ky.) 624. See also: *Haneman* v. *Western Meat Co.,* 97 Pac. (Cal.) 695; *Hoover* v. *Empire Coal Co.,* 149 Ill. App. 258; *Gola* v. *Mo., etc., Coal Co.,* 180 Ill. App. 96; *Johnson* v. *Wasson Coal Co.,* 173 Ill. App. 414; *Douglass* v. *Scandia Coal Co.,* 141 N. W. (Ia.) 960; *Green River Coal & Coke Co.* v. *Phaup,* 121 S. W. (Ky.) 651; *Wooster* v. *Bliss,* 35 N. Y. Supp. 514; *McGovern* v. *Fitzpatrick,* 131 N. Y. Supp. 1048; *Green & C. Street Pass. R. Co.* v. *Bresmer,* 97 Pac. 103; *Shaw* v. *Deal,* 7 Pac. Co. Ct. 378; *Eshner* v. *Mineral R. & Min. Co.,* 28 Pa. Super. Ct. 387; *Armington* v. *Providence Ice Co.,* 82 Atl. (R. I.) 263; *Levesquie* v. *Janson,* 42 N. E. (Mass.) 335.

Furthermore, it appears from Daniel Williams' testimony that appellee deliberately assumed further risk, in that he seized a root, stock or other weapon, and jumped down in front of the oxen, thereby taking the risk of being struck by the plow exactly as he was struck.

## V.

THE INJURY WAS NOT CAUSED BY THE TENDENCY THE LEAD OX IS SHOWN TO HAVE POSSESSED. The team at the

time appellee was injured was not running away, it was not out of control. John Culver would not admit that it was running at all. It was moving quickly, but the lead ox at the time had hearkened to the voice of his driver and was moving obediently to it.

## VI.

THE COURT ERRED IN SUSTAINING OBJECTIONS BY AP-
PELLEE TO TESTIMONY OFFERED BY APPELLANT AS TO
BIAS OF DR. D. P. BUTLER. Appellant was entitled under
section 1923 of the Code of 1906, section 1583, Heming-
way's Code, to examine him touching his interest in the
case, and his prejudice against appellant company is
such an interest as the statute contemplates. See *I. C.
R. R. Co.* v. *Haynes,* 64 Miss. 604, 1 So. 765; *Mackmasters*
v. *State,* 81 Miss. 374, 33 So. 2; *Newcomb* v. *State,* 37
Miss. 383; *McClelland* v. *State,* 54 So. 251; *Magness* v.
*State,* 106 Miss. 195, 63 So. 352.

*J. W. Cassedy and Naul & Yawn,* for appellee.

Appellant alleges that the trial court should have
given the peremptory instruction asked for, First: Be-
cause negligence cannot be predicated of the character of
work animals short of viciousness. There is no reason
why the law should not apply to animals as well as any
other instrumentality. Under the law the master is
bound to provide his employees with reasonably safe
tools, appliances, machinery and a place in which to work
and if a team is unsafe or any portion of the team makes
the appliance unsafe and dangerous, whether any animal
in the team was vicious or not would certainly make no
difference for the reason it is the duty of the company
under the law to provide its employees reasonably safe
instrumentalities and a reasonably safe place in which to
work, regardless of whether or not it is an animal or
some other instrumentality. The cases cited by the ap-

pellant declares against the rule here invoked. *Miller* v. *Blood,* 112 N. E. (N. Y.), 383-84.

Second: Because the plaintiff was furnished a reasonably safe team we submit that the plaintiff testified that the team was unsafe, working in the place where they were, and he notified the general superintendent of the company that this team was dangerous. A number of other witnesses testified that the lead ox was fiery and liable to run around at any time when around or surrounded by several persons.

We contend this makes no difference for the reason the master is required under the law to furnish its employees reasonably safe appliances and is liable for damages if they knew or could have known by reasonable care, and the attention of the superintendent and the foreman of the team was called to the unsafe team, and the superintendent promised and agreed that he would inquire into the matter, and the foreman of the team told the plaintiff, appellee here, that he had no other team to put in the place of the one complained of.

"Even if he deemed the off lead ox unsuitable, appellee in continuing to work him, assumed all risk, of what might happen to him." In reply to this, section 504 of Hemingway's Annotated Code settles this question in that the doctrine of assumption of risk is abolished.

DID COURT ERR "IN SUSTAINING OBJECTION BY APPELLANT TO TESTIMONY OFFERED BY APPELLEE AS TO BIAS OF DR. BUTLER." We submit that the court ruled correctly. It was permissible for counsel to have asked whether or not he was unfriendly and whether or not this would influence his testimony against the company, and follow it up with legitimate testimony to show that in fact he had such prejudice. This he did not do. Doctor Butler was introduced to show only the injury and the extent of it, and no evidence was offered to contradict his medical opinion, as to the extent of the injury, but to the con-

trary defendant introduced Dr. Lofton, who in fact corroborated Doctor Butler.

So there was no dispute as to the condition of his leg whatever it was, being actually caused from the injury complained of, and if Doctor Butler was prejudiced against the company he certainly did not exercise it in this case as shown from the facts for the reason the testimony of Doctor Lofton, corroborates the testimony of Doctor Butler in everything material testified to by him, and as a matter of fact the testimony of both the doctors was the opinion expressed by them as to the injury and effect of it.

Argued orally by *Herman Dean*, for appellant, and *J. A. Naul*, for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee was plaintiff in the court below and appellant the defendant. The plaintiff brought suit for a personal injury, alleged to be inflicted upon him by an unruly team of oxen, which were furnished by the team foreman of the appellant for the performance of the work which the plaintiff was engaged in. The work being done at the time of the injury was the grading or repairing of a railroad track of the appellant. The plaintiff was in charge of a crew performing the work of cutting down a hill and grade, to do which it was necessary first to take up the rails and cross-ties and plow the dirt up and move it to the desired place. This work was done under the general direction of the superintendent of the company, according to the plaintiff's evidence. This superintendent would point out what he desired to have done, and the plaintiff in charge of the crew would perform the work according to the best judgment of the plaintiff as foreman.

A four-yoke team of oxen was used in pulling the plow which inflicted the injury to plaintiff, and in the lead

yoke of oxen was an ox which was nervous and unruly, and which could not stand being crowded, and could not stand being thrashed with a whip. Next to this lead yoke of oxen was an unbroken yoke of oxen, being trained to work in the team, and plaintiff's proof shows that this unbroken yoke of oxen had a tendency to make the alleged unsafe and unruly ox in the lead yoke nervous, and whenever any one came in close touch with this alleged unsafe, and nervous ox he would run and turn and become unsafe and unruly. A number of men were working on the job, and at various times the crew varied from eight to ten men to twenty-odd men. The plaintiff was assisting in the work and was directing the operation of the plow when the oxen turned, made back in the direction of the plow, and, as a chain was attached to the plow to pull it, it caused the plow to be suddenly turned from the direction it was going, and plaintiff was struck and knocked down and run over by said oxen, and his leg broken between the hip and the knee, and otherwise injured seriously.

The plaintiff testified that he applied to the team foreman for another team of oxen with which to perform the work, and told the foreman that this special ox was unsafe and dangerous and unruly, and was liable to cause some one to be injured; that he had some horse teams but not enough to operate the plow; that he requested other teams, but the team foreman told him he would not furnish them, and that plaintiff would have to continue to use the teams he then had; that plaintiff thereupon went to the superintendent and told him of the unsafe disposition of this special ox, and of the danger of performing the work of the crew under such circumstances, and requested the superintendent to furnish him with a proper and safe team with which to perform the work; that the superintendent told him he would investigate the matter and see what he could do, but in the meantime to go ahead and use the team that he had

until he could investigate the matter; that this was a short time before the injury occurred.

On the trial the plaintiff introduced his physician, who had formerly had a position with the appellant company, and who seems to have been displaced or removed from such position as the company's surgeon by the superintendent of the company. This physician testified, and was the only physician and surgeon testifying as to the extent and character of the injuries to the plaintiff, and was the most expert witness testifying in reference to the nature, extent, and character of the injury. The appellant, in examining this witness (the physician) attempted to interrogate him with reference to the state of his feeling toward the superintendent of the company and toward the company also. The physician was asked the following questions, among others:

"Q. Doctor, how many cases have you testified in in which Mr. S. E. Moreton and his company was defendant? (Plaintiff objects; objection sustained; exception.)

"Q. Isn't it a fact that you yourself sued Mr. Moreton for one hundred thousand dollars, and feel bitterly towards him? (Plaintiff objects; objection sustained; exception).

"Q. Isn't it a fact that you made application to Mr. Moreton within a short time to be put back on this job, and he told you that you couldn't have it, and isn't it a fact you are unfriendly towards the Central Lumber Company? (Plaintiff objects.)

"By the court. The court will permit any legitimate evidence showing the state of feeling, or the existence of friction, between these parties, between the doctor and the defendant, but the question as asked is a little too broad.

"Defendant: I will repeat the question, and try to get it as the court thinks it should be,

"Q. Isn't it a fact that, because of the fact that you recently made application to be put back on the job, and because you lost the job with the Central Lumber Company, you are unfriendly to it?

"Plaintiff: We object to that.

"The Court: That is the same thing. I don't think we ought to inquire into the cause of these things, but the fact.

"Plaintiff: We ask the court to instruct counsel not to ask any more questions along that line.

"Court: I will rule on them as they are asked. The counsel is entitled to have those questions go into the record, of course. I sustain the objection to the question.

"To which action and ruling of the court exception was taken."

There was a verdict for the plaintiff and judgment for two thousand dollars, from which this appeal was prosecuted.

It is first insisted that the court below should have granted the appellant a peremptory instruction because negligence cannot be predicated on the character of the work animals short of viciousness, and because appellee was furnished a reasonably safe team; that, even if it were thought that the "off lead" ox was unsatisfactory, there was never a refusal to replace such ox, but a promise to investigate, which promise had not been breached at the time of the accident; because, even if he deemed the "off lead" ox unsuitable, appellee, in continuing to work such ox, assumed all risk of what might happen to himself; and because the injury was not caused by the tendency the lead ox is shown to have possessed; and because appellee was not engaged to railroad work and therefore cannot claim any benefit from section 6684, Hemingway's Code (chapter 194, Laws of 1908), which abolishes the fellow-servant doctrine.

It is next insisted that negligence cannot be predicated on the character of the work animals short of viciousness; that the proof does not show that the animal involved here was vicious. Without entering into any definition of "viciousness," we think that this court has laid down the rule that, where a master has knowledge that

an animal is unsafe and dangerous, and furnishes such
an animal to a servant for use in the master's service,
in case of injuries to the servant from such unsafe ani-
mal the master is liable.

In *Farmer* v. *Cumberland Tel. & Tel. Co.*, 86 Miss. 55,
38 So. 775, it was held that a master, having knowledge
that a horse is wild and accustomed to run away, who
furnished it to a servant ignorant of its character, for
use in his service, is liable to the servant for personal in-
juries resulting from the running away of the animal
while in such use. It is also held in that case that the
circumstances stated in the case were sufficient to show
knowledge of the unsafe character of the animal by the
master.

In *Miller* v. *Blood*, 217 N. Y. 517, 112 N. E. 383, it was
held, in a servant's action for injury in the course of his
employment, when driving a team of horses hitched to
a loaded truck owned and operated by the defendant,
when one of the horses, which the defendant knew to be
balky, kicked and bit his mate, causing him to lurch, and
the reins to pull plaintiff to the street, warranted the
jury in finding the defendant negligent. It was also held
that a master was bound to furnish instrumentalities rea-
sonably safe and suitable for the authorized use to be
made of them by a servant, which duty relates to a team
of horses, as well as to the harness and truck and the ap-
pliances connected therewith. At page 384 (217 N. Y.
519), the court said:

"The company, as the employer, was under the duty
to furnish instrumentalities and appliances reasonably
safe and suitable for the authorized use to be made of
them by the plaintiff as the employee. The duty related
and was applicable to the horses, as well as to the har-
ness and truck and the appliances connected with it.
*Nooney* v. *Pacific Express Co.*, 208 Fed. 274, 125 C. C.
A. 474 L. R. A. 1915B, 433; *Yarmouth* v. *France*, 19 Q. B.
D. 647; *Hammond* v. *Johnson*, 38 Neb. 244, 56 N. W. 967;
*Knickerbocker Ice Co.* v. *Finn*, 80 Fed. 483, 25 C. C. A.

579; *Simonds* v. *Interstate Lumber Co.*, 215 Mass. 263, 102 N. E. 323. Failure on the part of the company to fulfill such obligation constituted negligence, and actionable negligence in case it caused or contributed to the injuries received and those injuries were reasonably apprehensible."

In *Cowan* v. *Hydraulic Press Brick Co.*, 222 S. W. (Mo. App.) 924, it was held that the master must furnish his servant with a team reasonably safe for the purposes intended, in determining which the age and experience of the servant must be considered. See, also, *Smith* v. *Lumber Co.*, 22 Idaho, 782, 128 P. 546; *Arkansas Smokeless Coal Co.* v. *Pippins*, 92 Ark. 138, 122 S. W. 113, 19 Ann. Cas., at page 863, and case note beginning at page 863, of the Ann. Cas. report.

We think, therefore, that the testimony of the plaintiff as to the disposition and character of the ox, and the cause of the injury, and the notice to the master, was sufficient to show negligence on the .part of the master in furnishing the unsafe animal.

It is next insisted that, conceding that the team was unsafe and that the master was negligent with reference thereto, still plaintiff, with knowledge of the character of the team, voluntarily used said team and assumed the risk of so doing. Under section 504, Hemingway's Code (chapter 156, Laws of 1914), an employee does not assume the risk of his employment where the master is negligent, with certain exceptions therein named, which do not apply to the plaintiff in this case. It was not, therefore, a bar to the plaintiff's right of action that he operated with the team furnished him by the company, under the circumstances disclosed. At most under this record it would be contributory negligence only.

It is next insisted that the plaintiff cannot recover because the injury was inflicted by the negligence of a fellow servant. We do not think the fellow-servant rule applicable to the facts in this case. The injury was not caused by the negligence of the fellow servant, but was

caused by the unsafe instrumentality furnished by the master.

It is next insisted that it was error to refuse to permit the defendant to propound the questions to Dr. Butler above set forth, that Dr. Butler was a very important witness, and that defendant had a right to interrogate him for the purpose of showing his feeling, bias, prejudice, etc. It is manifest from the record that Dr. Butler's testimony was highly important in determining the extent of the injury. Much would depend upon his attitude as to fairness and his unbiased attitude in the case. The value to be given to testimony of this kind depends to a great extent upon the attitude and fairness of the witness. We think the questions should have been permitted, and that it was error for the court below to exclude them. We cannot say what effect this might have on the amount of the verdict. It was important on the measure of damages. We find, therefore, no reversible error on liability. We think the question was clearly submitted, and that the liability was established, but the judgment as to the amount of the damages will be reversed, and the case will be remanded for a new trial as to damages alone.

*Affirmed in part; reversed and remanded in part.*