## HERCULES POWDER CO. *v.* TYRONE.

(Division B. Oct. 14, 1929.)

[124 So. 74. No. 27968.]

Hannah & Simrall, of Hattiesburg, for appellant.

**O. C. Luper,** of Prentiss, and **Hall & Hall,** of Columbia, for appellee.

Argued orally by **T. C. Hannah**, for appellant, and **Lee Hall**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

J. W. Tyrone, a resident and citizen of Jefferson Davis county, Miss., filed suit in the circuit court of Pearl

River county against the Hercules Powder Company, a Delaware corporation doing business in the state, and having its main office at Hattiesburg, in Forrest county, Miss.; the suit being to recover damages in the sum of three thousand dollars on account of a personal injury sustained by the plaintiff while working for the defendant. The plaintiff secured judgment for the amount sued for, from which judgment this appeal is prosecuted.

The appellant, Hercules Powder Company, has a large manufacturing plant located at Hattiesburg, in Forrest county, Miss., where pine stumps are ground up and the turpentine and resin are extracted therefrom. In order to secure pine stumps for the operation of this plant, the company establishes "camps" at various places within a radius of ten to seventy-five miles of Hattiesburg, and at these "camps" large crews of men are employed to blast the stumps from the ground, cut them up, and haul them to the railroad station. The appellant company also in connection with its "camps" operated a "dummy" or log line from the railroad to the "camps," and the plaintiff was employed as engineer upon one of the locomotives which propelled these cars from the camps to the railroad, upon which locomotive, as part of its equipment, there was a rubber or fiber hose several feet long, attached to an iron pipe directly connected with the boiler or steam chamber of the engine; the hose being there for the convenience of the engineer in washing and cleaning the engine. There were two methods of cleaning the engine, one to clean it with the hot water hose, and the other to clean it with waste and coal oil. This hose was several feet long and was composed of rubber and fiber, and was attached, at the time of the injury by being wrapped with wire; that is to say, the hose was attached to an iron nipple and was wrapped around with wire.

It is contended by the plaintiff, and substantiated by the testimony, that the proper way to fasten this hose

to the nipple was to have clamps which could be tightened by means of screws when it should become loose or insecure. Plaintiff had been in charge of the locomotive for some time before the injury, and was an experienced engineer in operating locomotives. Seeing the method that was used in attaching the hose to the locomotive, and deeming it an insecure method, he used, ordinarily, the coal oil and cloth method of cleaning the engine, and preferred that method, which seems generally to have been preferred by owners of locomotives because the hot water and steam of the hose method tended to remove the paint from the locomotives and cause them to rust.

The engineer, plaintiff here, was employed by agents of the appellant, and was under the direction of a camp foreman, who, in turn, was under the direction of a superior officer in charge of all the camps. On the day of the injury, taking the plaintiff's version of it, the superintendent of the camps directed the plaintiff to take the hose and use the steam and hot water method in cleaning the locomotive thoroughly, as he was expecting a superior officer to visit the camp next day and wanted the engine in good shape. Plaintiff stated that he did not like to use the hose as he regarded it as unsafe, but that he was directed by the camp foreman to use it that day, and the camp foreman promised plaintiff to procure another hose for said locomotive on the following Monday. Plaintiff stated that, relying upon that promise, he used said hot water on said occasion, and while using it, the nipple slipped off and plaintiff was injured by the escape of hot water and steam, one of his eyes being severely injured, and that he suffered great pain, and was treated for his injured eye for several weeks.

There was testimony for the defendant which contradicted the plaintiff's statement about his being directed to use the hose on that occasion, and which tended to show that the method used in attaching the hose to the locomotive was a proper and safe method.

The jury's finding adopted the theory of the plaintiff.

When the case came on for trial, the appellant moved to either dismiss the suit, or transfer it to appellant's principal place of business at Hattiesburg, in Forrest county, Miss. This motion was overruled, and this is assigned as error, constituting the first assignment of error.

Section 500, Hemingway's Code, 1927, chapter 166, Laws of 1908, reads as follows: "Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found, and if the defendant is a domestic corporation, in the county in which said corporation is domiciled, or in the county where the cause of action may occur or accrue except where otherwise provided, and except actions of ejectment and actions of trespass on land, and actions for the statutory penalty for cutting and boxing trees and firing woods and actions for the actual value of trees cut which shall be brought in the county where the land or some part thereof, is situated; but if the land be in two or more counties, and the defendant resides in either of them, the action shall be brought in the county of his residence, and in such cases, process may be issued against the defendant to any other county. If a citizen resident in this state shall be sued in any action, not local, out of the county of his household and residence, or if a public officer be sued in any such action, out of the county of his household and residence, although a surety or sureties, or some of the sureties, on his bond, or other joint defendant, sued with him, be found or be subject to action in such county, the venue shall be changed, on his application, before the jury is impaneled, to the county of his household and residence."

It is contended by the appellant that granting the right of change of venue to a citizen constitutes a discrimination against it, contrary to the Fourteenth Amend-

ment to the Federal Constitution. It is also contended that the above-quoted statute discriminates against a foreign corporation as against a domestic corporation, and that appellant had the right to either have the cause against it dismissed or to have a change of venue to Forrest county, where its principal office existed.

This court was confronted with a similar contention in Morrimac Veneer Co. v. McCalip, 129 Miss. 671, 92 So. 817. In discussing this contention, at page 683 of the Mississippi Report, 92 So. 818, we said: "It is clear that the legislature in this last sentence was making provision for individuals, and not for corporations, and it was so understood and construed in Plummer-Lewis Co. v. Francher [111 Miss. 656, 71 So. 907], supra, and the court below refused the change of venue because of the announcement in the above case. It is insisted by the appellant that it comes within the purview of this clause, as it is legally a citizen resident of this state, and to deny it the same right to a change of venue as a natural person would render the statute unconstitutional, because obnoxious to the Fourteenth Amendment to the Constitution of the United States. The appellant has cited no authority so holding, and we do not understand that the Fourteenth Amendment" to the Constitution "prevents the state from providing different rules as to venue as to corporations and individuals."

The appellant contends that these cases were decided prior to the time the supreme court of the United States decided the Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165, case. In that case the Arkansas statute puts the citizen and the domestic corporation in the same class, and a foreign corporation in a separate class, but the statute broadly permits actions, if brought against foreign corporations, to be brought in any county in the state; and another statute of the same state permits both foreign corporations and persons residing out of the state to be sued in any county in which

they may have property or debts owing to them, but the latter statute was not applicable to the decision. The court held that the Arkansas statute denied corporations equal protection of the law, and that venue was a substantial right, and there could not be arbitrary discrimination against foreign corporations. In the court's opinion it was said that:

"No doubt there are subjects as to which 'corporations admissibly may be classified separately from individuals and accorded different treatment, and also subjects as to which foreign corporations may be classified separately from both individuals and domestic corporations and dealt with differently. But there are other subjects as to which such a course is not admissible; the distinguishing principle being that classification must rest on differences pertinent to the subject in respect of which the classification is made.

"Here the separate classification of foreign corporations is in respect of the venue or place of bringing transitory actions. The statutes mean foreign corporations doing business within the state by her permission, and therefore having a fixed place of business therein and a resident agent on whom process may be served. We speak only of them. So far as their situation has any pertinence to the venue of transitory actions, it is not distinguishable from that of domestic corporations and individuals. Certainly there is no substantial difference. The opinion of the State court does not point to any relevant distinction, nor have counsel suggested any. Of course the restricted venue as to domestic corporations and individuals is prompted by considerations of convenience and economy; but these considerations have equal application to foreign corporations. So far as the plaintiffs in such actions are affected, it is apparent that there is no more reason for a state wide venue when the action is against a foreign corporation than when it is against a domestic corporation or a natural person.

So we conclude that the special classification and discriminatory treatment of foreign corporations are without reasonable basis and essentially arbitrary.''

It will be noted in that case the corporation involved had no other place of business than the county where its officers were, and the suit was brought in a county remote from the place of business, in a county where the corporation had never done any business, and the law authorized it to be sued anywhere in the state, whereas a domestic corporation, or a natural person, could only be sued in the county of residence, or where they were to be found. No such provision is involved in the case before us. The foreign corporation was doing business in the county where it was sued. It had its business localized in that county, and was found there within the meaning of the statute of this state.

In Dean et al. v. Brannon, 139 Miss. 312, 104 So. 173, it was held that Code of 1906, section 707, Hemingway's Code 1917, section 486, authorizes action to be brought in the county in which any one of the defendants may be found, and that a foreign corporation is found in a county in which it has an agent subject to process and a place of business. It will be seen from the statute, section 500 of Hemingway's Code 1927, that domestic corporations and individuals, and foreign corporations may be served with process in the county where found. The above decision of our court interprets this section, and we think, as interpreted, the section is not subject to any objections; and, consequently, that the court was not in error in overruling the motion to dismiss or to change the venue.

It is next insisted that a directed verdict should have been given the defendant upon the ground that there was no negligence shown, and among the contentions in this respect is that the master owed the servant no duty with respect to the hose and its use because it was a simple tool, and that under the decisions of this court

the master is not under duty as regards a mere simple tool, or to furnish the servant with a safe tool, as the servant's knowledge and judgment in such case are equal to that of the master. Wausau Southern Lumber Co. v. Cooley, 103 Miss. 333, 94 So. 228; Parker v. W. C. Wood Lumber Co., 98 Miss. 750, 54 So. 252, 40 L. R. A. (N. S.) 832; and other cases.

We do not think the hose here involved can be classed as a simple tool, and the doctrine of simple tools, therefore, has no application here. The hose was attached to the boiler and to be used it had to have water brought from the boiler and played upon the machinery. The boiler in its several parts constituted one instrumentality, and it would be improper to consider all the several attachments as if they were detached from the boiler and independent of it. It took the hose and the boiler with all the machinery to constitute the tool here involved.

Where a machine is complicated, the mere fact that a servant may happen to know as much as the master knows about the instrumentality does not relieve the master from furnishing the servant with a safe instrumentality. It is a nondelegable duty of the master as to complicated machinery and appliances to furnish the servant with safe machinery and appliances with which to do his work, and to keep such machinery and appliances in a reasonably safe condition.

As shown by the record, the master has other servants whose business it was to inspect the appliances and to see that they were in good condition. At least, the plaintiff's evidence makes such a case, and the jury accepted it.

It is next insisted that the directed verdict should have been given the defendant because there was another safe way in which to clean the locomotive, and that the engineer could have elected the way of cleaning the engine, either with waste and oil, or with the hose, and

that he assumed the risk, and was under no compulsion to do as he did; that it was the duty of the engineer to keep the locomotive clean in a good working condition, and that was part of his duty undertaken as part of his employment. This contention might be sustained if the master, through his proper agents, had not directed the plaintiff to use the appliances in the way they were used, after the plaintiff had disclosed to them his judgment that such appliances used in the directed way were unsafe. When this attitude of the plaintiff was made known to the superior officer, he was not directed to use his best judgment, or to act upon his own judgment, but the superior officer assumed that the appliances were safe, that the hose was safely attached to the locomotive, and its servant had a right to rely upon the master's judgment under such circumstances. When the master requested him to continue the employment, and to perform the particular services as directed by the master against the judgment of the employee, the master, in effect, represented the appliances to be safe, and the servant had the right to rely upon the master's judgment, and to act under his direction, and such servant did not assume any risk in doing so, because the master was guilty of negligence in so directing him to do under the circumstances.

Section 518, Hemingway's Code 1927, provides: ''In all actions for personal injury to an employee, and in all actions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master; except as to conductors, or locomotive engineers, in charge of dangerous or unsafe cars or engines voluntarily operated by them.''

The latter part of this section constituting an exception to the rule is not applicable in the case before us, because the engineer in the case at bar was not *volun-*

*tarily* operating the engine. He was *directed* to do so, and it cannot be said that, when the servant only acted against his own best judgment at the direction of the master, he was acting voluntarily. Central Lumber Co. v. Porter, 139 Miss. 66, 103 So. 506, 42 A. L. R. 221. See 18 R. C. L., p. 649, par. 142; 18 R. C. L., p. 896, par. 180; Hough v. T. & P. R. R. Co., 100 U. S. 213, 25 L. Ed. 612.

It is next contended that the court erred in giving the plaintiff the following instruction: "If the jury believe from a preponderance of the evidence in this case that the defendant company prior to the plaintiff's employment, negligently attached and left the hot water hose in an unsafe and dangerous manner to the pipe from the boiler of its locomotive engine, and that on account thereof on the occasion in question there was danger of the said hot water hose being blown from the said pipe under the pressure of steam while using said hose, and that the defendant should have anticipated that some one would be thereby injured, and that the plaintiff protested to the defendant's assistant superintendent and camp foreman on said occasion against the use of said hose and that the said assistant superintendent and camp foreman were informed of the manner in which the said hose was attached to the said pipe and directed the plaintiff to use said hose on said occasion, and assured him it was safe, and promised to furnish another hose for said locomotive on the following Monday, and that the plaintiff relied upon the same and used said hot water hose on said occasion as a result thereof, and that while so engaged in and about the discharge of his duties the said hot water hose was blown from said pipe and that the plaintiff was thereby burned and injured, the jury should return a verdict in favor of the plaintiff."

We think the criticism made of this instruction is unfounded, and it does not constitute reversible error.

It is also contended that the instruction is in conflict with an instruction given for the defendant in the fol-

lowing words: ''The court instructs the jury for the defendant that it was the duty of the plaintiff to use reasonable and ordinary care to prevent an injury to himself while in the employ of the defendant and that it was the duty of the said plaintiff not to use the hose in question if he knew the same was dangerous or was likely to cause injury to himself while being used in the manner in which the said plaintiff was using it.''

In view of what we have said about the duty of the master and the right of the servant, where the master directs the servant to use a dangerous instrumentality, we think, if there was any conflict in the instructions, that the instruction given for the defendant was wrong, and stated the law more favorably for the defendant than it was entitled to have it stated.

The same thing may be said of the second and third instructions given for the defendant, which are alleged to be in conflict with one for the plaintiff.

We think there is no reversible error, and that the judgment should be affirmed.

Affirmed.

ON SUGGESTION OF ERROR.

**Anderson, J.,** delivered the opinion of the court.

We have very carefully considered the suggestion of error filed in this case. We see no reason for changing the holding of the court in the opinion handed down.

Appellant lays much stress on the comparative knowledge doctrine. The trouble with appellant's position in that respect is that the comparative knowledge doctrine, and our statute, chapter 156 of the Laws of 1914 (Hemingway's Code 1927, section 518), abolishing the assumption of risk doctrine, cannot stand together where the injury to the servant resulted in whole or in part from the negligence of the master.

Suggestion of error overruled.