DANCIGER OIL & REFINING CO. v. FREE.

(In Banc. May 24, 1948. Suggestion of Error Overruled June 14, 1948.)

[35 So. (2d) 542. No. 36774.]

Brandon, Brandon, Hornsby & Handy, and **L. A. Whittington,** all of Natchez, for appellant.

**Engle, Laub, Adams & Forman,** of Natchez, and **Casimer D. Moss,** of Winnfield, La., for appellee.

Argued orally by **Gerard Brandon,** for appellant, and by **R. B. Forman,** for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

Attachment in chancery brought appellant, a non-resident corporation, into the Chancery Court of Adams County to defend the suit of appellee, seeking damages for the loss of an eye, while in the employ of appellant. Appellee demanded damages of $15,000.00 and decree was awarded him for the full amount, whereupon the defendant appealed.

At the close of all the testimony appellant moved the court to dismiss the bill of complaint, which motion was overruled, and this action of the court is assigned as error, along with several other assignments, including the charge that it was error to enter decree against it. The issue is whether or not appellant was guilty of justiciable negligence proximately causing the injury to its employee, the appellee, compensable in damages therefor.

The business of appellant at the time was drilling an oil well in the Cranfield District of Adams County, and the appellee was employed by it as driller on a drilling rig. As driller, he was in charge of a crew of four men. He was responsible for the actual drilling operations, and it was also his job to make repairs to machinery and equipment, if it broke down. He was of 20 years experi-

ence in oil operations and approximately two and a half years as a driller.

A component part of the machinery of the drilling rig was a chain, consisting of links attached together with pins, and forming an operative part of the machinery. This chain transmitted power from the boiler of the generating plant to the rotary shaft, and "from the rotary shaft by mechanical process to the drill stem, which drill stem was rotated or turned by the power which had been transmitted by means of the chain operation, and which drill stem in turn rotated the bit which made the hole some thousands of feet into the ground." We use here appellee's description, in his argument in his brief, based on the evidence.

When this chain became broken, the machinery stopped, and it was appellee's duty to repair it. This was done, as he testified, by detaching the chain from the machinery, which was the regularly recognized proper method. Upon the stoppage of the machinery on this occasion appellee did detach the chain, placed the affected parts in a vise, and, using a small ball peen hammer, beat upon the connecting pin causing the trouble, so as to replace it with another. Two pins, one crystallized, and the other bent, had caused the trouble. The pins were held in place at the top of the links by cotter pins through a hole for the purpose, they were bradded at the bottom, and were approximately three inches long. To get them out, the cotter pin was removed, and appellee was beating, in the usual and customary way, upon the bent pin with the small hammer, in order to force it out so it might be replaced, when a probably glancing blow by him caused a small sliver of steel to penetrate the cornea and lens of his eye, resulting in the permanent blindness thereof, when the sliver was removed. This is a summary of his testimony as to how the accident occurred and the injury was caused.

There was evidence that the chain was old, and had broken before, and been repaired by appellee; that he had

asked for a new chain, which was ordered; and on receipt was installed after the accident. There was also evidence that new such chains also were subject to breakage in operation. It is to be noted, however, that neither the operation of the machinery nor the breakage of the chain injured appellee. His injury occurred while the machinery was stopped, and the chain detached, and placed in a vise. Appellee did not receive his hurt until he picked up the simple tool, a ball peen hammer, and began the repair, as it was his duty to do, of the chain. He was not working with the chain as a tool at the time, but on it as the object of repairs. The only tool he was using was the ball peen hammer, weighing less than half a pound.

The original bill contains this charge: "The use of the old chain was dangerous to complainant and to the other man working on the job in question, and although the said tool pusher promised to furnish the said complainant with a new chain, yet the said defendant negligently permitted the said old chain to remain in use and negligently neglected to furnish said complainant and the other man on the job a new and efficient chain suitable and proper for the work, and as a consequence of the use of the said old chain and the breakage of the same and the necessity of the repair thereof . . . the said complainant then and there became grievously hurt; . . . and had said defendant had the proper regard for the welfare and safety of the said complainant, by replacing said chain promptly as it should have done when complaint was made to it of the condition of said chain by the said complainant, that the injury in question would not have happened or occurred to the said complainant, and in all probability there would have been no necessity of making any repairs whatsoever on the said new chain; that on the occasion herein complained of said defendant failed, neglected and refused to use reasonable care in supplying the said complainant with reasonably safe tools and appliances with which to do his work, and with a reasonably safe place to do his work."

It is to be remembered that neither the running of the machinery nor its stoppage inflicted the injury on appellee; neither did the chain; neither did the links cause the wound. It was caused proximately by the blow of a small peen hammer upon a bent pin in the link being repaired in a vise, by appellee, as it was his duty to do, and as he was doing in the regular and conventional manner, and in accordance with his experience of several years. The blow of the hammer caused the unusual event of a sliver of steel flying from the pin in the link in the vise and into appellee's eye, blinding him. It was a simple operation with a simple tool, and appellants, in our judgment, were guilty of no justiciable negligence proximately injuring appellee, and hence the Chancery Court should not have awarded appellee any damages, but should have dismissed the bill.

See Seifferman v. Leach, 161 Miss. 853, 138 So. 563; Vehicle Woodstock Co. v. Bowles, 158 Miss. 346, 128 So. 98, 99; Morgan Hill Paving Co. v. Morris, 160 Miss. 79, 133 So. 229; Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277, 279. In the case last cited we said this: "Courts in civil cases act upon reasonable probabilities. In trials under the common law, to prove a possibility only, or to leave the issue to surmise or conjecture, is never sufficient to sustain a verdict. New Orleans & N. E. R. Co. v. Holsomback, 168 Miss. 493, 495, 151 So. 720; Berryhill v. Nichols, [171] Miss. [769], 158 So. 470, 471; Masonite Corp. v. Hill, [170] Miss. [158], 154 So. 295, 95 A. L. R. 157. Except in rare cases, of which this is not one, proof, without more, that a certain event transpired as a result of a stated condition, is proof only of the possibility and does not establish the probability. Jabron v. State, [172] Miss. [135], 159 So. 406. . . .. the proof must show that the probability was a reasonable probability, reasonably to have been anticipated by a reasonably prudent person, . . .". We think it cannot in reason be argued here that the sliver would probably be made to fly from this relatively small pin, by a blow of

this small hammer, and destroy the sight of appellee's eye. There was presented a mere possibility. The operation was a simple one, performed in the usual way by the use of a simple tool in the hands of an experienced workman, for the purpose of an uncomplicated repair job, by one whose duty it was to make the repair. There was nothing wrong with the hammer.

A case somewhat similar to the one at bar is Southern Ry. Co. v. Hensley, 138 Tenn. 408, 198 S. W. 252, 253. We quote the first syllabus: "A sharp-bladed, hammer-headed cleaver, used to cut iron rods by striking it with a sledge, was a 'simple tool,' the fact that the handle was not wedged being apparent on casual observation; and the employe, having equal opportunity to observe it, could not recover when injured by the head flying off." See also Middleton v. National Box Co., D. C., 38 F. (2d) 89.

We find nothing in the cases of Middleton v. Faulkner et al., 180 Miss. 737, 178 So. 583, and Hercules Powder Co. v. Tyrone, 155 Miss. 75, 124 So. 74, 475, that would fasten liability on appellant, or entitle appellee to the decree in his favor erroneously granted by the learned Chancellor, under the facts of the case before us.

Naturally our sympathies go out to this appellee, but sympathy cannot be permitted to influence us in dealing with the problems that come before us for adjudication. Therefore, in view of what we have said, supra, after a most careful consideration of the record, the briefs and the authorities cited, we are constrained to reverse the Chancery Court, and enter a decree here dismissing the original bill, since we are of the opinion it was error not to have dismissed it in that court.

Reversed and decree here for appellant.