# Allen *v.* Fincher.

## *Libel and Slander.*

(Decided June 18th, 1914.   65 South. 946.)

1. *Libel and Slander; Complaint; Time.*—In an action for slander, where the month wherein the slanderous words were alleged to have been uttered was laid under a videlicet, the time was sufficiently alleged, although the blanks, referring to the days of the month, were not filled out.

2. *Same; Pleadings; Aider by Verdict.*—Although the complaint was defective in not sufficiently alleging a sufficient publication of the slanderous words, it was not error to overrule a demurrer thereto not taking that ground of objection; the complaint being sufficient, after plea and verdict, to support the judgment.

3. *Same; Words Actionable.*—From a statement that a person saw a man and an unmarried female "engage in a very dirty act," or in "a very black act," in a secluded place, it could be reasonably inferred that such person meant an act of sexual intercourse, as the average mind in speaking of such an act clothes it with language which is not directly a statement of the fact.

4. *Same; Evidence.*—The evidence examined, and held to sustain a finding that the alleged slanderous words were uttered at the time alleged in the complaint.

5. *Pleading; Demurrer; Specifications.*—No demurrer is allowed but to matter of substance, which the demurrant must specifically call attention to.

6. *Courts; Stare Decisis.*—The doctrine of stare decisis is of great force, even as regards matters of practice merely.

7. *Charge of Court; Directing Verdict.*—Where there is some evidence tending to establish the material allegations of the complaint, the court cannot properly direct a verdict for the defendant.

8. *Witnesses; Impeachment; Interest or Bias.*—Where there was evidence from which the jury could infer that the defendant had been prosecuted recently in the federal court for a matter connected with the matter then in controversy, it was competent to show that a witness for the plaintiff here had been the prosecutor of defendant in the other trial, such evidence tending to show interest or bias.

9. *Same.*—The rule in this state is that any fact showing, or tending to show, bias or prejudice of a witness may be proven in a legal manner, although the better practice is to exclude such testimony, unless the alleged prejudiced witness denies on examination the facts tending to show bias.

APPEAL from DeKalb Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by Emma Fincher against S. I. Allen, for damages for an alleged slander. Judgment for plaintiff and defendant appeals. Reversed and remanded.

HUNT & HUNT, for appellant. Counsel discuss the various matters assigned for error, but cite no authorities in support of the same.

ISBELL & SCOTT, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—Counts 1, 5, 6, and 7 are clearly not subject to demurrer. The blanks in these counts might well have been filled out, but the demurrers were not well taken simply because of the blanks. The blanks refer to the day of the month in which the alleged slanderous language was used, but as the counts show under a videlicet the month in which the slanderous words were used, we think the *time* of the slander alleged in the complaint is sufficiently stated in each of the above counts to meet the requirements of the law. Indeed counts 1, 5, 6, and 7 are in substantial compliance with the form provided by our Code for this class of actions.

(2) Count 2 does not, with the technical accuracy required by good pleading, allege a publication of the slander, and, had the trial court's attention been directly called to this specific technical defect by a demurrer addressed to the count and setting out this particular defect, the trial court, no doubt, would have sustained the demurrer. In that event the plaintiff could have amended the count by setting up that the alleged slander was uttered in the presence of divers persons, or in the presence of certain named persons. The count, however, was not demurred to on this particular ground,

and as it is plainly sufficient, after plea and verdict, to support a judgment, the trial court cannot be put in error for overruling the defendant's demurrer to this count. The count was not subject to the specific properly stated grounds of demurrer which the defendant assigned to it. "No demurrer in pleading can be allowed but to matter of substance, which the party demurring specifies; and no objection can be taken or allowed which is not distinctly stated in the demurrer."—6 Mayf. Dig. p. 722, subd. 214.

(3) We think that prior to the time a witness, Copeland, was put upon the stand, the fact that the defendant, Allen, had been prosecuted in a federal court had been sufficiently developed by the evidence. We also think that from the evidence which had been introduced when Copeland took the stand as a witness, the jury had a right to infer that the prosecution in the federal court grew out of the alleged slander which was the basis of this suit. In other words, we think that when Copeland took the stand as a witness the jury were then in possession of facts from which they had a right to infer that the defendant had recently been tried in a federal court. This being the situation, the trial court refused to permit witness Copeland to testify, on behalf of the defendant, that Frank Stapp, who had testified as a witness for the plaintiff in *this* case, and whose tstimony, if believed by the jury, was damaging to the defendant, was *the prosecutor* of the defendant in the case which had been tried in the federal court. The defendant desired this testimony for the purpose of showing that the witness Frank Stapp was *biased* against him. "The partiality of a witness for one party or side, or his prejudice against the other side, is always regarded as bearing on the trustworthiness of his testimony. One way of showing the existence of such bias is his prior

expression of such feelings. Thus it is always allowable to inquire of the witness for the prosecution, in cross-examination, whether he has not expressed feeling of hostility towards the prisoner. The like inquiry may be made in civil actions; and, if the witness denies the fact, he may be contradicted by other witnesses. But the use of such evidence is allowable independently of its effect as a contradiction of the witness. In some courts the limitation is laid down that the details of the quarrel or other exhibition of feeling are not to be gone into, but the phrasing of this limitation varies. The witness may explain away his expressions as not due to real prejudice. Some courts require, in analogy to the principle described post, section 462, viz., impeachment of a witness by showing contradictory statements, 'that the attention of the witness be first called to the alleged utterances before other evidence of it can be offered.'"—1 Greenl. on Ev. (6th Ed.) p. 575, § 450.

The above quotation emphasizes· the admissibility of evidence for the purposes indicated, but it illustrates the hopeless contradictions which exist in the opinions of courts of last resort as to *how* such evidence shall be brought to the attention of the triers of the facts. As the multiplication of issues is not desirable, it would seem that the better rule would require the party against whom a witness is testifying to develop, on *cross-examination*, the fact of the bias of the witness. If, on the cross-examination, the witness admits the facts showing his bias, then there should, at once, be an end of the matter. If he, on such cross-examination, *denies* the facts showing such bias, then the party against whom he has testified should be—and in all courts, including our own, is—allowed to show by other witnesses the existence of such facts, indeed, *this* seems to have been the rule which this court had in mind in

the well-considered cases of *McHugh v. State,* 31 Ala. 317-320, and *Fincher v. State,* 58 Ala. 215; and this seems to have been the custom followed in most of the cases which, on appeal, have found their way into this court. This court, however, in the case of *Jones v. State,* 76 Ala. 8, in discussing this subject said: "It is a common mode of discrediting a witness for the prosecution to ask him, on cross-examination, whether he has not expressed feelings of animosity or revenge towards the prisoner, and so, of a witness for the prisoner, whether he has not previously evinced a feeling of partiality or friendliness for him. * * * There is no reason why the fact indicating such bias may not be as well proved in any other legal way, because it is the fact, and not its mode of proof, which goes to the root of the witness' credibility."

The same doctrine was annuonced by this court in *Haralson v. State,* 82 Ala. 47, 2 South. 765, and in that case a judgment was reversed because the trial court refused to allow a witness for the *defendant* to testify to a statement made to him by a witness who had testified in the case for the state, which tended to show that such witness for the state was unfriendly towards the defendant, although the defendant on the cross-examination had not interrogated such witness for the state about the particular statement. While for administrative purposes, the better rule on the subject is, in our opinion, the one which we have above indicated, and while the question is one only of practice, our predecessors, in the cases above cited, have declared the rule in this state to be as we have quoted it. The doctrine of stare decisis is, and should be, of great force, even as to matters of mere practice, and for that reason we are of the opinion that the trial court should have allowed the defendant to ask, and the witness Copeland to answer

the question by which the defendant sought to elicit the testimony which we have had under consideration.—*Hereford v. Combs,* 126 Ala. 369, 28 South. 582. It is better for us to follow decisions which are not in express conflict with any well-fixed principle of law than to create uncertainty and doubt by overruling them simply because we regard them as not in harmony with a rule which has been adopted in many of our states—and usually followed here—simply as.an administrative aid to the courts in keeping before juries the true issues which they are impaneled to try.

(4) We are of the opinion that when a person states that he saw a man and an unmarried female "engaged in a very dirty act," or in "a very black act," in a place where an unobserved act of sexual intercourse could probably have taken place, it may reasonably be inferred that such person intends to state that he saw an act of sexual intercourse on the part of such man and woman. A person who has seen a man and an unmarried female engaged in murder, arson, larceny, or the like usually uses exact language in telling what he saw. The average man, however, in speaking of an act of adultery, clothes the act in language which, while not so direct, is nevertheless rarely misunderstood.

(5) There was some evidence tending to establish the material allegations of each count of the complaint. The trial court, therefore, cannot be put in error for refusing to give the affirmative instructions which the defendant asked as to each count. It is true that, under a videlicet, some of the counts charged that the slanderous words were uttered in *November* or *December,* 1910. It is also true that the witness Stapp, upon whom the plaintiff relied to sustain some of the counts, testified that the words about which he testified were uttered, to the best of his recollection, about February 15, 1910.

This witness testified, however, that the words were uttered *shortly before the bringing of this suit.* This suit was brought on *January 27, 1911.* The jury might therefore, well have concluded that the witness was mistaken when he fixed the time of the alleged utterance at or about February, 1910, and that in fact the words were uttered only a month or two before the suit was brought. The jury might well have inferred that when the witness said "shortly before" the bringing of the suit he did not intend or mean *eleven months* before, but *only* a *month or two* before the bringing of the suit.

We have above considered all the questions presented by this record, and we find that in the matter pointed out by us the trial court committed reversible error. The judgment of the trial court is therefore reversed, and the cause is remanded for further proceedings in the court below.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.