# Southern Railway Co. *v.* Harrison.

## *Death Action.*

(Decided November 7, 1914. Rehearing denied December 17, 1914. 67 South. 597.)

1. *Railroads; Person on Train; Plea; Violation of Rule.*—Where the action was for the death of a brakeman employed by another railroad company while on a train being operated over defendant's line of road, a plea setting up a violation by deceased of a rule of his employer, but not setting up any facts to show that such rule was made for defendant's benefit, or that it was in any way connected therewith, and the plea setting up the violation of the rule of defendant without showing facts making the decedent subject thereto, were demurrable.

2. *Pleading; Fact or Conclusion; Contributory Negligence.*—Pleas that the decedent negligently rode upon the engine were not good as pleas of contributory negligence, as the averment of negligence was a mere conclusion.

3. *Railroad; Injury to Third Person; Negligence.*—It cannot be said as a matter of law that it was negligent for deceased brakeman to ride on the engine.

4. *Same; Evidence.*—Where the action was for the wrongful death of a brakeman employed by another company, caused in a collision on defendant's line, and the conductor of defendant's train had stated that he had not worked for the defendant since the collision, the exclusion of evidence as to whether he was laid off by defendant on the morning of the accident, was not reversible error.

5. *Witnesses; Examination; Bias.*—If it be conceded that the fact that witness had been laid off by defendant was a circumstance showing his ill feeling against defendant, and affecting his credibility, the purpose of such question should have been suggested by asking the witness as to his state of feeling towards defendant, and if the witness said it was good, then by a resort to facts and circumstances tending to show his bias, such as that he was laid off by defendant on the morning of the accident.

6. *Railroads; Injury to Third Persons; Jury Question.*—Under the evidence in this case, it was for the jury to determine the issue of wanton negligence, and whether the conductor of defendant whose watch showed the correct time, read it correctly.

7. *Same; Negligence; Company Liable.*—The fact that the conductor of defendant's train read his watch wrong, and in reliance thereon ran his train in violation of orders, was negligence on his part, rendering his company liable, if the death resulted proximately therefrom.

8. *Same; Instruction.*—A charge asserting that in arriving at the verdict the jury might consider in connection with all the other evi-

[Southern Railway Co. v. Harrison.]

dence, the fact that the life of the engineer of defendant was in danger, in the event of a collision in determining whether his conduct was wanton or wilful, was not only argumentative but singled out the parts of the evidence.

9. *Same.*—A charge that the damage, if any, was such sum as would sufficiently punish defendant for the wrongful acts of its servants, which sum would not be increased because the widow of the deceased would get the amount assessed by the jury as punishment, was clearly bad.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by Flora Harrison as administratrix against the Southern Railway Company, for damages for the death of her intestate. Judgment for plaintiff, and defendant appeals. Affirmed.

The complaint alleges in effect that plaintiff's intestate was the servant, agent, or employee of the Mobile & Ohio Railroad Company; that said company then and there operated a train over and upon defendant's line of railway with the consent of defendant for a reward; that plaintiff's intestate was then upon said train so operated by the Mobile & Ohio Railroad Company in the performance of his duty as such servant, agent, or employee when the said train on which plaintiff's intestate was, was run into or against by a train or engine which was a part thereof, then and there operated by defendant Southern Railway Company. The first count alleges the negligence of defendant in the negligent management and operation of said train under its control, as aforesaid. The second count alleges the negligent collision. The third count, the negligence of a person in the service or employment of defendant, who had charge or control of the train which ran into or collided with the train upon which plaintiff's intestate was, and the fourth count alleges wanton or willful injury. The pleas are as follows: "(9) Plaintiff's intestate was himself guilty of contributory negligence

\* \* \* in that at the time of said collision he was riding on the engine of said Mobile & Ohio Railroad Company train in violation of a rule of said company, which was known to him, requiring him to ride on the top of his train while running, and defendant avers that at the time of said collision said Mobile & Ohio train was running, and that plaintiff's intestate had negligently left his post of duty, and was negligently riding on the fireman's seat on the engine of said train, instead of on the top thereof, as required by said rule.

"(10) Negligently riding on the engine of said train, which was running, in violation of a rule of the defendant company, of which he had knowledge, and to which he was subject in the discharge of his duty; said rule requiring him to ride on the top of said train while the same was running, and as a proximate consequence of the violation of said rule, as aforesaid, he was injured when said engine on which he was riding collided with another engine on defendant's track.

"(11) Defendant had in force and effect a rule governing freight brakemen, of which the intestate, who was at the time employed as a freight brakeman, had knowledge, and to which he was subject, which said rule is as follows: 'When their trains were running they must ride on top of them, and in such positions as to be able to control them most effectively, and to pass signals the whole length of said train.' And defendant avers that plaintiff's intestate, in violation of said rule, negligently left the top of his train and rode negligently on the engine of said train while the same was running."

The conductor in charge of the train which struck the engine in which plaintiff was riding was alleged to be one Hudson Ernest.

The following charges were given for plaintiff: "(8) I charge you that if Hudson Ernest was the conductor of a special train pulled by engine No. 763, it was the duty of said Ernest as such conductor to operate said train according to proper orders and instructions given him by the authority in charge of the movements of that train, and if said Ernest as such conductor read his watch wrong, and in reliance on such reading ran the train in violation of such orders so given him, this was at least negligence, and defendant is responsible for its proximate consequences if the death of plaintiff's intestate was one of such consequences.

"(9) The fact, if it be a fact, that Ernest read the time on his watch as a few minutes after 4 o'clock, when it was by the watch in fact a few minutes after 5 o'clock, was negligence on the part of Ernest.

"(10) I charge you that if the conductor in charge of the special train violated his orders in operating the train, and so caused the collision, and that this violation was caused by a reading of a watch as one hour earlier than the right time, and one hour earlier than the time actually shown by the watch, then this was negligence."

The following charges were refused to defendant: "(5) In arriving at your verdict, you have a right to consider in connection with all the other evidence in this case the fact, if it be a fact, that the life of Engineer Dean was in danger in the event of a collision, as determining whether his conduct was wanton or willful on the occasion in question."

"(7) The damages against defendant in this case, if any, are such sum as will sufficiently punish defendant for the wrongful act of its agents or servants, and this sum cannot be increased because of the fact that de-

ceased's widow will get the amount assessed by the jury as punishment."

STOKELEY, SCRIVER & DOMINICK, for appellant.

ALLEN & BELL, for appellee.

ANDERSON, C. J.—(1) There was no error in sustaining the plaintiff's demurrer to the defendant's special pleas 9, 10, and 11. Plea 9 sets up the violation of a rule of the Mobile & Ohio Company, but does not set up any facts to show that said rule was made for defendant's benefit, or that it was in any wise connected therewith. Pleas 10 and 11 set up a violation of the defendant's rules, but fail to show any facts making the plaintiff's intestate subject thereto or bound by them. The intestate was employed by and was working for the Mobile & Ohio Company, and the rules of this defendant as to its own brakemen had no application to the servants of the Mobile & Ohio Company.

(2) Nor can we pronounce the pleas good as to contributory negligence upon the theory that the intestate, independent of the rules, voluntarily placed himself in a place of danger, as the averment that he negligently rode upon the engine is a mere conclusion. One of the pleas says he was riding in the fireman's seat on the engine, while the others simply aver that he was negligently on the engine.

(3) We cannot say as matter of law that it is negligence upon the part of a brakeman to ride upon the engine. He might be much safer upon certain parts of the engine than upon the top of the cars. The case of *Warden v. L. & N. R. R. Co.*, 94 Ala. 277, 10 South. 276, 14 L. R. A. 552, is not an authority to uphold the pleas in question. There the court was not dealing with

pleading, but with the evidence, which showed that the plaintiff improperly left the place where he belonged and was riding upon the pilot or crossbeam to which the cowcatcher was attached, with his legs hanging out in front of the pilot, and this while the train was out on the main line proceeding from one station to another, and when the only duty he could have possibly had to perform was upon the top of the train.

(4, 5) The trial court committed no reversible error in declining to let the defendant ask the witness Ernest, on cross-examination, to state whether or not he was laid off by the Southern Railway Company on the morning of the accident. The witness had just stated he had not worked for the defendant since that time, and it was therefore immaterial to the issues involved whether he quit or was laid off by the company, unless, as now suggested in brief of counsel, that the fact that he was laid off by the defendant was a circumstance affecting his credibility. If this be true, the purpose or relevancy of the evidence should have been suggested to the trial court, as there is nothing in the question which would indicate that it was being asked to show bias on the part of the witness. Moreover, the more proper and orderly way to have shown bias or ill will was to have asked the witness the direct question as to his state of feeling towards the defendant, and he may have admitted that it was bad. On the other hand, if he said it was good, then the defendant could resort to the introduction of facts and circumstances showing that the witness was biased against the defendant.

(6) We do not think that the defendant was entitled to the general charge as to the wanton count. The defendant's conductor who caused the train to proceed before waiting for the arrival of the Mobile & Ohio

train, then due or nearly due, was familiar with conditions and surroundings; he knew of train 92; had known of it for years; knew that it made its run daily on that track; knew its schedule independent of the time table; had just had it all solemnly called to his attention by the order received at Coalburg; knew from these orders that No. 92 was coming west; knew from these orders, which he said he received correctly, that No. 92 would be at Bryan at 5:15; a short while before the collision consulted his watch; the watch showed the correct time; looked at his watch; read it; the watch showed 5:10; he went on, conscious of the approaching train, conscious that a wreck would occur should they meet; knew they were on the same track; knew that if a wreck occurred some one would be probably killed or injured; yet he went on with a reckless indifference as to consequences; the trains met, there was a wreck, and the intestate was killed. It is practically conceded that if Ernest read the watch correctly and then proceeded, he would be guilty of wantonness, but it is contended that as he misread his watch he was guilty only of simple negligence. It was a question for the jury as to whether or not he read his watch correctly; he examined it, and it spoke the correct time. This was positive, affirmative evidence as to the time He says he examined it, but did not read it as it was. This was negative evidence, and it was a question for the jury as to whether or not he read it correctly or incorrectly. Moreover, we do not mean to hold that it would not be a question for the jury as to wantonness even if the conductor was honestly mistaken as the time. In matters of such hazard and importance as the running of trains, we are not prepared to say, as matter of law, that the failure to have the correct time or the failure to properly read and translate train or-

[Southern Railway Co. v. Harrison.]

ders is a sufficient excuse to reduce the conduct of the men in charge of the train to simple negligence merely. The disastrous consequences and results from collision are too hazardous and destructive of human life to permit ignorance and negligence as to the contents of train orders or as to the correct time to authorize derelicts in charge of trains to escape a charge of wantonness, as matter of law, upon the excuse that they were merely mistaken as to the time or had misread the train orders, etc. These are matters which call for the highest degree of care and prudence, and we cannot hold that negligence and mistakes in this respect will, as matter of law, excuse the derelict trainmen of wanton misconduct.

The cases of *Birmingham Waterworks v. Wilson*, 2 Ala. App. 581, 56 South. 760, and *Birmingham Waterworks v. Murray*, 1 Ala. App. 443, 55 South. 271, have no bearing upon the present question, in principle or by analogy, as there is quite a distinction between mistakes in ordinary bookkeeping and those relating to the control and handling of dangerous and hazardous instrumentalities, not the least important of which is the running and handling of trains where the preservation of human life often hinges upon minuteness and accuracy to the highest degree.

(7) There was no error in giving the plaintiff's charges 8, 9, and 10, as the conductor Ernest was guilty of negligence, as matter of law, under the facts therein hypothesized.

(8, 9) There was no error in refusing the defendant's charge which we have marked "5" on page 43 of the record. It is argumentative, and singles out certain parts of the evidence.

(10) Charge 7, refused the defendant, was palpably bad.

The other insistencies as to the ruling upon the evidence are so plainly without merit that a discussion of same can serve no good purpose and would only lengthen and incumber this opinion.

The judgment of the city court is affirmed.

Affirmed.

MCCLELLAN, MAYFIELD, and DE GRAFFENRIED, JJ., concur.