(101 South. 441)

**THOMPSON & DONOHOO v. MOBILE & O. R. CO. (6 Div. 930.)**

(Supreme Court of Alabama. June 30, 1924. Rehearing Denied Oct. 16, 1924.)

**1. Railroads ⚓350(33)—Distance at which engineer discovered truck held for jury.**

Distance at which engineer discovered truck approaching crossing *held* for jury.

**2. Railroads ⚓338—Duty of engineer discovering peril of truck stated.**

Engineer's duty toward driver of truck approaching crossing begins when he discovers peril, which depends, not on moment he first saw truck, but on relative distances from crossing, speeds and stopping distances, and presence or absence of apparent movements to stop truck.

**3. Railroads ⚓338—Duty of engineer when peril appears stated.**

Engineer, when peril to truck approaching crossing appears, must use all means known to skillful men in his position to avert accident; measure of duty being that of careful, prudent men in view of imminence of danger.

**4. Railroads ⚓350(33)—Issue of subsequent negligence held for jury.**

Where there was evidence that engineer, after seeing truck approaching crossing while still 200 feet or more away, did not promptly give warning signal or check speed, affirmative charge on issue of subsequent negligence was reversible error.

**5. Trial ⚓142—Facts and reasonable inferences wholly for jury.**

Facts and reasonable and fair inferences therefrom are wholly for jury.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action for damages by Thompson & Donohoo against the Mobile & Ohio Railroad Company. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

Jones, Jones & Van de Graaff, of Tuscaloosa, for appellants.

There was sufficient evidence from which the jury might draw a legitimate inference that defendant's engineer was guilty of subsequent negligence, and the affirmative charge as to that count should not have been given. Payne v. Roy, 206 Ala. 432, 90 South. 605; Vaughn v. Dwight, 206 Ala. 552, 91 South. 77; A. G. S. v. Mims, 207 Ala. 331, 92 South. 548; H. A. & B. v. Sanders, 91 Ala. 560, 8 South. 778; C. of G. v. Ellison, 199 Ala. 571, 75 South. 159; A. G. S. v. Sanders, 203 Ala. 57, 82 South. 17; Snider v. A. G. S., 210 Ala. 119, 97 South. 209; A. G. S. v. McWhorter, 156 Ala. 269, 47 South. 84; A. G. S. v. Molette, 207 Ala. 624, 93 South. 644.

Foster, Verner & Rice, of Tuscaloosa, for appellee.

The affirmative charge was properly given as to the subsequent negligence count. L. & N. v. Cloud, 207 Ala. 373, 92 South. 550; Peters v. Sou. Ry., 135 Ala. 533, 33 South. 332; Davis v. Chicago, etc., Co., 159 F. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424; Chicago, etc., Co. v. Biwer (C. C. A.) 266 F. 965; L. & N. v. Turner, 192 Ala. 392, 68 South. 277; Hines v. Cooper, 205 Ala. 70, 88 South. 133; L. & N. v. Williams, 172 Ala. 560, 55 South. 218; Rothrock v. A. G. S., 201 Ala. 308, 78 South. 84.

BOULDIN, J. The suit is for damages resulting from the collision of a motor truck with a locomotive at a grade crossing. The sole question here presented is: Did the evidence make a case for the jury on the counts presenting an issue on negligence of defendant's servants after discovery of peril?

The facts not in substantial controversy, as far as deemed material, are: That there was a collision at a grade crossing of the railroad and a public highway; that the locomotive with train of cars was some 660 feet in length; that the truck was of 3½ tons capacity, loaded with about 2,500 pounds of freight; that the engineer on the locomotive and the driver on the truck were both familiar with the crossing; that the railroad track was straight; that the collision occurred in daylight; and that both train and truck were in motion when they came in collision. The evidence of the truck driver tended to show that he approached the crossing at the rate of 8 to 10 miles per hour; that when within about 200 feet of the crossing he slowed down the truck, keeping a lookout first to his right; that when within 20 to 25 feet of the crossing he looked to the left and saw the train approaching about 200 feet from the crossing; that the truck was then moving about 4 miles per hour; that he put on gas to get across ahead of the train, being of opinion it was safer so to do than to stop the truck; that the en-

gine did not respond promptly, and he then did try to stop; that seeing the train was upon him, he abandoned the truck, which was struck midway and knocked about 30 feet; that no signals of alarm were given, and the train did not perceptibly check its speed until about the moment of collision; that the train was running about 35 miles per hour, and came to a stop with the last car and caboose at the crossing. The evidence of the engineer tended to show the train was fully equipped and in good order; that he was keeping a lookout for the crossing; that he first saw the truck when it was about 50 feet from the crossing running about 15 miles per hour; that the locomotive was then 75 to 100 feet from the crossing, running about 18 to 20 miles per hour; that he immediately used all possible preventive effort to stop the train, and brought it to a stop within about 250 feet; that the crossing signal was given one-fourth of a mile from the crossing, the whistle blown at intervals, and the bell was automatically ringing. There was other expert testimony that the stopping distance of the train going at 20 miles per hour would be about 600 feet; and evidence that the stopping distance of the truck going at 4 miles per hour would be about 10 feet.

Some evidence tended to show obstructions to the view by bushes growing on the right of way. There is a wide variance in the testimony of numerous witnesses as to the distance the railroad track could be seen from a point on the highway 50 feet from the crossing, viz., 30 feet, 150 to 300 feet, 300 to 600 feet, and, one witness says, three-fourths of a mile.

[1] One vital inquiry is: When did the engineer first see the truck? If he saw the truck 50 feet from the crossing, as stated by the engineer, and the train was still 200 feet from the crossing when the truck was 20 feet from the crossing, as stated by the chauffeur, it would follow that the train was a greater distance from the crossing when the engineer discovered the truck. This, in connection with the evidence of an open view, and that the engineer was in his place keeping a lookout for the crossing, would make it a jury question as to the distance at which he did discover the approaching truck.

[2, 3] The duty of the engineer, now under review, began when he discovered the peril of the truck. This may or may not be the same moment he first saw the truck. The relative distances from the crossing, relative speeds, relative stopping distances, the presence or absence of movements or apparent movements to stop the truck, all enter into the inquiry whether there was apparent danger of a collision. In such conditions a collision, or no collision, often depends on the doings of only a few seconds. The measure of duty is that of careful, prudent men in view of the imminence of danger. When peril appears, the engineer must use all means known to skillful men in his position to avert an accident.

[4] Usually, there are only two things an engineer may do when both train and vehicle are converging to a common point at the same time: First, a warning signal, the most effective warning at his command, to direct the attention of the other party to his danger, that he may co-operate in averting an impending accident; second, to stop the train with all the means at hand, or so to check its speed that the two moving objects will not reach the crossing at the same moment. In the case at bar there is some evidence that neither of these measures was promptly taken. If the chauffeur in fact had his attention directed to the right, would a blast from the whistle have called his earlier attention to the danger from the left, and so prevented an accident? If the truck was seen heading rapidly into the crossing, while the engine was still 200 feet or more away, would prompt action have so checked the speed of the train as to give time for the truck to clear the crossing? There is some evidence that neither was warning given, nor the train checked, until about the moment of the collision.

In this state of the evidence, the giving of the affirmative charge on the issue of subsequent negligence was an invasion of the province of the jury, and constitutes reversible error. A. G. S. R. R. Co. v. McWhorter, 156 Ala. 269, 47 South. 84; A. G. S. R. R. Co. v. Sanders, 203 Ala. 57, 82 South. 17; Snider v. A. G. S. R. R. Co., 210 Ala. 119, 97 South. 209; So. Ry. Co. v. Gantt, 210 Ala. 383, 98 South. 192; Central of Ga. v. Ellison, 199 Ala. 571, 75 South. 159.

[5] In the further progress of the cause it must be known that we have dealt only with those phases of the testimony involving the question of the relative duties of court and jury; that no opinion is expressed or intended on the weight of the testimony. The facts of the case and the reasonable and fair inferences to be drawn therefrom in reaching a just verdict are wholly for the jury. Neither have we considered initial negligence of the chauffeur nor the question of his contributory negligence after his discovery of peril nor the issue of wantonness. None of these matters is here presented.

For the error pointed out, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.