198 So. 141
### LOUISVILLE & N. R. CO. et al. v. MARTIN.

### 7 Div. 602.

Supreme Court of Alabama.

June 6, 1940.

Rehearing Denied Oct. 10, 1940.

Steiner, Crum & Weil, of Montgomery, Gibson & Gibson, of Birmingham, and Paul O. Luck, of Columbiana, for appellants.

L. H. Ellis, of Columbiana, and D. G. Ewing and Clark & Trawick, all of Birmingham, for appellee.

GARDNER, Chief Justice.

At three o'clock in the afternoon of a clear June day Martha L. Martin was struck and killed by the engine of a freight train of the defendant railroad corporation, operated at the time by defendant Leonard, as engineer and defendant Virgin as the fireman; the accident occurring at a public road crossing in the town of Thorsby, Alabama, known as "North Crossing."

The suit is by the administrator of the estate of said Martha L. Martin, to recover for her death under our homicide statute (Section 5696 Code, 1923), and from a judgment for plaintiff in the sum of $5,000 against the three defendants this appeal is prosecuted.

From the conclusion here reached we think the discussion here may be brought within a narrow compass.

The freight train, loaded and containing some forty cars, was traveling at a speed estimated from twenty-five to forty-five miles per hour. Plaintiff's intestate was walking along the old Birmingham and Montgomery highway, going in the same direction as the train and with her back to it until she turned toward the crossing. Her vision and hearing were normal and nothing to obstruct her view.

She apparently heedlessly walked into the left front side of the engine, was not run over, but thrown into the air and thus met her death. She neither stopped, looked nor listened, and her conduct is inexplicable.

Upon the plainest principles of the law relating to contributory negligence no recovery could be had upon any theory of initial simple negligence, and the trial court so instructed the jury. Southern Ry. Co. v. Miller, 226 Ala. 366, 147 So. 149.

Plaintiff's case, in the last analysis, was rested upon the doctrine of subsequent negligence, based upon the theory that both the engineer and the fireman negligently failed to use all means known to skillful men in their positions to avert injury to plaintiff's intestate after a discovery of her peril. Thompson v. Mobile & O. R. Co., 211 Ala. 646, 101 So. 441.

The evidence of the fireman could properly be interpreted to the effect that as he saw plaintiff's intestate when she was within 12 or 15 feet approaching the crossing and the train some 150 feet therefrom, he became aware of her peril, that is, that she was walking onto the crossing without any apparent notice of the oncoming train, that he thereupon called to the engineer to blow again the whistle. Both the fireman and engineer insist this was promptly done and that the bell was ringing. But there was proof no whistle was blown and that the bell was not ringing.

The engineer insists though he was looking ahead and no obstruction for 200 feet he did not see plaintiff's intestate at any time as she was approaching the crossing; and the fireman's warning informed him that something was close to the track probably, or "something going across"; that he did not attempt to slacken the speed, he says, "because I was over the crossing". The brakes were not applied before the accident nor the train thrown into emergency. Of course, though he testified to the contrary, the jury could reasonably infer the engineer who was looking ahead and with unobstructed view for 200 feet, did likewise see plaintiff's intestate as she walked the highway and as she turned toward the crossing. Louisville & Nashville R. R. Co., v. Davis, 236 Ala. 191, 181 So. 695.

True there was little time to act and the jury was considering performance of duties within a few seconds. Southern Ry. Co. v. Miller, supra. But as observed by this court in Thompson v. Mobile & O. R. Co., 211 Ala. 646, 101 So. 441, there were two things open to the engineer, a warning signal, the most effective at his command, and a slackening of the speed of the train. Plaintiff offered proof that neither of these precautions was observed, and much reliance is had upon the recent case of Pollard et al. v. Crowder, Ala.Sup., 194 So. 161 (here much in point), wherein reference was made to the fact that a sharp blast of the whistle may have served as a sufficient warning and have thus prevented the fatal step, and that the brakes may likewise have been applied. As against the fireman we think it must be conceded a weaker case is presented. He promptly made appeal to the engineer to blow the whistle, and as we have said whether this was done was a disputed issue of fact for the jury. He could not himself blow the whistle, a suggestion in appellee's brief, for it clearly appears that it is not at hand for him but is on the engineer's side.

Whether the bell was rung was also a disputed fact. If it was not, it appears the fireman could have done so. Perhaps this is a slender thread upon which to rest a charge of negligence on the fireman. But we cannot say as a matter of law that it was no negligence to fail to do so or that as a matter of law the failure in this regard was of no consequence. We have omitted details of proof, but have reached the conclusion a jury case was presented as against all defendants and the affirmative charge as to each properly refused.

An important witness for plaintiff was one Couch, a locomotive engineer, who qualified as an expert, testifying as to his familiarity with the construction and operation of engines and trains and their braking system and his experience in stopping trains of various lengths and sizes.

We think it apparent from the record that plaintiff's greatest reliance for recovery rested upon the proof tending to show the negligence of the engineer in failing to promptly give a warning signal by a blast of the whistle and his admitted failure to apply the brakes or put the train in emergency and thus slacken the speed. Upon these issues Couch made a valuable witness for the plaintiff. His

testimony tended to show that brakes are applied instantly over the entire train and simultaneously; that the engineer can blow the whistle and put on the emergency in a fraction of a second and all at the same time; that the train could have been delayed from five to seven seconds in reaching the crossing had the emergency brakes been applied.

In short the testimony of Couch gave ground for argument that the engineer on this occasion not only was negligent in failing to blow the whistle, as some of the evidence tended to show, but that by prompt action he could at the same time have so slackened the speed of the train as to avert the accident.

As to all of his testimony upon these issues defendants' expert witnesses are in sharp conflict, and it is clear enough the testimony of Couch was greatly stressed upon the trial before the jury just as it is stressed in brief here.

On cross-examination of the witness Couch defendant elicited an admission that in recent years he had testified for the plaintiff in damage suits. "I didn't count them, as often as I got summons." Upon direct examination the plaintiff elicited from the witness, after declaring that he was an experienced engineer, also further information that he was "a member of the Brotherhood of Engineers of the State of Alabama".

█ Couch had testified in a former trial of this case and defendant on cross-examination asked him if he did not state on the former trial that he "knew more than two-thirds of all the engineers in the country". Plaintiff's objection was sustained and much discussion of counsel followed. Witness was also asked if in fact he did claim to know more than two-thirds of all the engineers in the country, and plaintiff's objection thereto sustained. We think all of this comes within the legitimate scope of cross-examination. But as we read the record the witness did answer that he did not claim as an expert to know more than two-thirds of the men in the country about engines, but that he did answer, with the trial court's permission "Yes" to the question: "Did you make this answer on a former trial of this case in this court: 'I think I know more about an engine, or engines than the average man, possibly two-thirds more.'"

As we view it, therefore, the questions were answered and these matters need no further consideration.

Defendant further sought to elicit from the witness on his cross-examination that he had been discharged by two railroads, the Seaboard Air Line and the Southern Railroad Companies. Plaintiff interposed objections which were sustained and the questions left unanswered.

As to the Seaboard the question was: "Q. You are the same Mr. T. E. Couch who was discharged from the Seaboard Air Line Railroad for viciousness of temper, intemperance and dishonesty?" Counsel for plaintiff argued the objection upon the theory that the only way to impeach a witness is to show he had been convicted of a crime involving moral turpitude, saying: "He may have been discharged from several railroads and it doesn't make a particle of difference affecting the testimony of the witness.". Defendant then sought to elicit from the witness that he had so testified in court in another case and the objection was sustained, and plaintiff's counsel insisted that the court instruct counsel for defendant to ask no more questions of that nature, to which the court replied, "He hasn't got any answer; he can ask any question probably and it wouldn't amount to anything".

As to the Southern Railroad the question simply was: "Q. You were discharged from the Southern?" After some discussion the objection was sustained and exception reserved.

We have here to some extent particularized in order to show the importance attached to these matters by counsel for plaintiff and defendant and their stress before the jury. Also for the purpose of showing the theory of counsel for plaintiff upon which the objections were interposed. And these are the same theories here pressed upon our attention in brief. But we think these theories are untenable here.

█ In the first place plaintiff had shown the membership of the witness in the Brotherhood of Locomotive Engineers indicating clearly to the jury, we think, his good standing in railroad circles, and perhaps also indicating his continuous service as a locomotive engineer. Certainly on cross-examination defendant had the right to clarify the situation by an ad-

mission of the witness that his service had not been continuous by reason of a discharge from two railroads. But we conclude that the basis for these questions goes deeper than this.

Questions of evidence must be looked at from a practical and common sense standpoint, for the issues of fact are to be determined by common sense practical men. So viewing the matter, therefore we think the discharge of the witness Couch from two railroads was proper to be given to the jury from the standpoint of bias or prejudice. The jury had a right to know these facts in weighing the testimony of the witness, for we think it clear enough the jury could infer at least some degree of bias or prejudice against railroads in general, from a witness who has been discharged by two railroads and who has in recent years lent himself as a witness for plaintiffs in damage suits against them. Both reason and common sense dictate.

In Adler v. Miller, 218 Ala. 674, 120 So. 153, 157, we approvingly quoted the following observation from 2 Wigmore on Evidence, Section 949: "The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place."

And in the Adler case the court, speaking of the matter of cross-examination of a witness, said: "In such inquiry a witness' social and business relations with the party, his intimacy or hostility, and such other circumstances as might reasonably create bias, prejudice, or hostility may be properly elicited for such limited purpose, for the consideration of the jury".

And in Louisville & N. R. Co. v. Courson, 234 Ala. 273, 174 So. 474, 476: "Under the general rule, anything which tends to show bias, unfriendliness, enmity, or inclines the witness to swear against a party, is admissible." See also Alabama Power Company v. Gladden, 237 Ala. 527, 187 So. 711.

We are, of course, mindful of the rule that the range of cross-examination rests largely in the discretion of the trial court, and the court's ruling thereon will not be here revised unless it is made clearly to appear that error intervened to the prejudice of the objecting party.

But the right of cross-examination is a valuable right "probably and generally the most effective instrumentality for eliciting the witness' 'means of obtaining correct and certain knowledge of the facts to which he bears testimony.' " Tate v. State, 86 Ala. 33, 5 So. 575.

The question is discussed in Wilson v. State, 195 Ala. 675, 71 So. 115, 117, with reference to expert witnesses, as here, and we there observed: "It is usual in cross-examination that great liberty is allowed by the court. * * * And while the right to cross-examine may be afforded the defendant, yet if it is so circumscribed and limited as to strip it of its benefit, the right 'loses its substance and becomes a shadow.' "

We recognized in that case, as we do in this, that in passing upon questions of this character the court should act with great caution, and to that end the record has been carefully examined. This is a closely contested litigation. The measure of duty is reflected in the measure of time to act after discovery of peril, if and when so discovered, and the matter of seconds becomes important.

On two former trials the jury was unable to agree and, of course, mistrials were declared. The importance of the testimony of the witness Couch is readily apparent. The questions asked we think were proper and should have been allowed and we conclude their denial has probably injuriously affected defendant's substantial rights.

The right of cross-examination was too narrowly confined and for the rulings in this regard the judgment must be reversed.

Upon consideration of the objection to the proof of the fact that this crossing was a populous one, we are of the opinion no error here intervened. Louisville & N. R. Co. v. Davis, 236 Ala. 191, 181 So. 695.

Other questions presented may not again appear and what has been said should suffice for another trial of the cause.

For the errors indicated, the judgment stands reversed.

Reversed and remanded.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.

On Rehearing.

GARDNER, Chief Justice.

At the very outset of the direct examination of the expert witness Couch, plaintiff had him to say: "I am a locomotive engineer. I have had experience as a locomotive engineer. I am a member of the Brotherhood of Engineers of the State of Alabama."

We think it clear enough it may be reasonably inferred from this proof that the witness had continuously remained in good standing in railroad circles. To the average layman the language used would, in our opinion, carry such an implication. Perhaps, strictly speaking, as argued by plaintiff, such might not be the case. But unexplained we think the average juror would so conclude. Certainly the membership of the witness in the Brotherhood was elicited for some purpose and to make some character of impression upon the jury, other than his mere experience and qualifications as an engineer, as to which he fully testified.

We do not think, as plaintiff contends, that defendants had the benefit of testimony that would serve to counteract the implication referred to. In the course of further cross-examination and referring to the distance of the whistle, the witness said he had "never measured it. It has been several years since I had my hand on one". And in another part of his examination the witness stated he "left the Seaboard May 10, 1929. That is not the last experience I had on a railroad." He further stated he worked for the Southern Railway at one time "something like two and a half or three years". But these scattered statements fall far short of giving defendants the benefit of the answer their questions sought to elicit from the witness. We therefore reaffirm our original view that this cross-examination was proper and too narrowly restricted.

We were impressed, and so stated, that the question of bias or prejudice presented a stronger reason for this character of cross-examination and plaintiff counters with the argument that as a condition precedent to such a question the witness must first be asked as to his state of feeling towards the defendant, citing Southern Railway Co. v. Harrison, 191 Ala. 436, 67 So. 597; Smith v. Clemmons, 216 Ala. 52, 112 So. 442; Union Mutual Ins. Co. v. Peavy, 24 Ala.App. 116, 133 So. 300; U. S. Lumber & Cotton Co. v. Cole, 202 Ala. 688, 81 So. 664. But if the questions were, however, otherwise permissible, this argument would, of course, be inapplicable and we have so concluded as above indicated.

But this aside for the moment, and considering the questions from plaintiff's viewpoint, we still think the argument stresses too far any such precedent requirement. Much depends upon the particular case, for in some instances an admission of bias would suffice to end the matter, as illustrated in Smith v. Clemmons, supra; Southern Railway Co. v. Harrison, supra, and Union Mutual Ins. Co. v. Peavy, supra. And in the Harrison case, supra, it would seem the admitted facts suffice for the purpose in hand.

The case of U. S. Lumber & Cotton Co. v. Cole, supra, did not deal with cross-examination but with independent proof to show bias, treated in Allen v. Fincher, 187 Ala. 599, 65 So. 946; cited in note 16 A.L.R. p. 994, where other authorities of this state are collected and wherein the author of the note attempts differentiation of our cases upon the line of reasoning employed in Sexton v. State, 13 Ala.App. 84, 69 So. 341. But we are at present dealing with the matter of cross-examination of the witness and these latter authorities are therefore not here controlling. Neither are our authorities or those from elsewhere intended to require in every case, as a condition precedent as to any question on cross-examination tending to show bias, that the witness must first be asked the state of his feelings. Illustrations abound to the contrary.

In Martin v. State, 125 Ala. 64, 28 So. 92, and Motley v. State, 207 Ala. 640, 93 So. 508, 27 A.L.R. 276; Shepherd v. State, 135 Ala. 9, 33 So. 266, and National Surety Company v. Boone, 227 Ala. 599, 151 So. 447, no such condition precedent was suggested and no such question asked. Numerous other cases of like import (illicit relations between witness and accused to show bias) are found in the note to the Motley case in 27 A.L.R. p. 276.

In Motley v. State, supra, the case of Fincher v. State, 58 Ala. 215 (likewise noted in Curlce v. State, ante, p. 16, 195 So. 430) is approvingly cited to the effect that even though the witness admits unfriendly feeling, the adverse party may go further and show its foundation and extent by ref-

erence to conduct and declarations and circumstances but without entering into particulars.

There the court further observed:

"This is not denying the rule that the details of a quarrel or difficulty cannot be gone into for the purpose of showing hostility. But it is proper, even before the witness has denied hostility or bias, to inquire as to their existence because of some designated fact or transaction affecting the witness and his relation to the party. This is well illustrated in the case of Sanford v. State, 143 Ala. 78, 39 South. 370, where it was held error to exclude the defendant's question to a state's witness: 'Is it not a fact that you and Sanford are unfriendly on account of a whisky bill you owe him?' That case cannot be distinguished in principle from the case before us. A similar example will be found in Shepherd v. State, 135 Ala. 9, 33 So. 266.

"Of course the details of the illicit relation cannot be inquired into, and the questions propounded did not undertake to do so. Fincher v. State, 58 Ala. 215. We have held that those questions were proper on the cross-examination of the witness Willie Houston."

The case of Fincher v. State, 58 Ala. 215, is a striking example that a mere admission of bias on the part of a witness need not necessarily end the matter. There the witness admitted a hostile feeling towards the defendant and that the two were not on speaking terms. But it was held error to reverse to refuse on cross-examination the question which sought to elicit a hostile declaration made by the witness, the court saying: "The extent of the hostility of the witness, is the subject of just inquiry. It is not enough, and the door to further cross-examination is not closed, so that it does not descend to the particulars of the controversy between the witness and the party, by the mere statement of the witness that he is hostile to the party against whom he is testifying. The party has the right to go further, and show that the hostility is malignant and that the witness has the inclination, and would not scruple at the means or manner of doing him the most grievous injury. We hold, therefore, that the City Court erred in refusing to permit the question propounded the witness to be answered."

In certain instances, therefore, it is clear an admission of bias does not close the door to further cross-examination and any statement in some of our cases (Smith v. Clemmons, supra; Allen v. Fincher, 187 Ala. 599, 65 So. 946; Southern Rwy. Co. v. Harrison, supra) indicating to the contrary should be considered in the light of the facts of the particular case.

This observation is also applicable to any language which might indicate any necessity that the witness be first asked as to his feeling as a condition precedent to further cross-examination intended to show bias. Any such expressions are mere suggestions at the most, and have not been regarded as laying down any hard and fast rule. Numerous illustrative cases are to be found in the note to Vassar v. Chicago B. & O. R. Co., 74 A.L.R. 1154, including Sanford v. State, 143 Ala. 78, 39 So. 370; Motley v. State, 207 Ala. 640, 93 So. 508, 27 A.L.R. 276; Vann v. State, 140 Ala. 122, 37 So. 158. See, also, Central Lumber Co. v. Porter, 139 Miss. 66, 103 So. 506, 42 A.L.R. 221. And in National Surety Corp. v. Boone, 227 Ala. 599, 151 So. 447, this court recognized the wide latitude allowed on cross-examination of a witness to show interest or bias, and gave no thought whatever to any matter of formality which would necessitate first a question as to the witness' state of feeling. Indeed, we are inclined to believe, that to most practicing attorneys it would appear that any such necessary precedent question, in many instances at least, would but serve to put the witness on his guard and thwart the purpose of the cross-examining counsel.

The author of the note to Vassar v. Chicago B. & O. R. Co., 74 A.L.R. 1154, in reviewing the authorities, makes the following observation, in which, after a study of the cases, we find ourselves in full accord.

"It is submitted that the extent to which a witness may properly be cross examined as to collateral circumstances for the purpose of showing bias depends in some instances upon the *importance of his testimony,* and especially upon whether such testimony is of a nature to be seriously affected by prejudice, bias, or hostility.

"Although the testimony of a witness may be legally important, it may be of a character not readily responsive to bias, or may be merely cumulative to that of witnesses whose statements are clear, reasonable, and undiscredited. As to such witnesses, any but the briefest inquiry into a supposed hostility may be, in fact, frivolous. Especially, in such cases, questions

which relate to scandalous or other matter likely to affect a jury improperly would seem clearly to have no place in a fair investigation of issues.

"On the other hand, a witness may be testifying in reference to matters peculiarly within his knowledge, and as to which contradiction is difficult, where the turn of a phrase may control the disposition of the case. In such instances, it is submitted, a very *searching inquiry as to circumstances* indicating the existence of intellectual bias, or of emotional hostility, should be allowed. And in reason, such an examination might not become unimportant merely because the witness had admitted some unfriendliness, for the general nature of a quarrel or unfriendliness might be illuminating, and easily disclosed. See Central Lumber Co. v. Porter, 1925, 139 Miss. 66, 103 So. 506, 42 A.L.R. 221." (Italicizing ours.)

■ In the instant case we have previously observed the importance of the testimony of the witness Couch, opinion testimony of an expert, incapable of contradiction save by opinion of others. Not only is there allowable great latitude on cross-examination of a witness, but this latitude is enlarged as to expert witness. Wilson v. State, 195 Ala. 675, 71 So. 115.

Further illustrative of the wide latitude allowed on cross-examination are those cases holding that a witness, on such cross-examination, may be asked as to his uncommunicated motive or purpose, though such proof would have been incompetent on direct examination. Hurst v. State, 133 Ala. 96, 31 So. 933, and Linnehan v. State, 120 Ala. 293, 25 So. 6.

Counsel for plaintiff, we think, are too critical and exacting in their conception of the right of cross-examination, at least it so appears in this particular case. Illustrative was the insistence that defendant had no right to question Couch concerning his claim that he knew more than two-thirds of all engineers in the country and had so testified in court. It was the defendant's right to bring this out that the jury might get a better picture of the witness, for certainly one in weighing the opinion evidence of a witness has a right to know whether or not he is of a boastful and egotistical nature, for whatever that may be worth. A close study of the record, however, disclosed to the court that defendant had the benefit of an answer, though counsel for plaintiff made no such insistence in brief. And now it is urged that defendant has no right to show the witness' discharge from two railroads, though admittedly, however "crudely", as plaintiff insists, that he has lent himself as an expert witness against railroads.

■ Of course a witness is due to be protected by the court against, and certainly no counsel should attempt anything like, an oppressive or unjust cross-examination as stated by the Court of Appeals in Havens v. State, 24 Ala.App. 288, 134 So. 814, cited by plaintiff. But this is not to say the witness must be shielded against any embarrassment that might result from a proper cross-examination.

Further inquiry into the matter would be of no value. If the witness was wrongfully discharged, as may be argued, then the greater the reason for an intensified ill feeling. So in any event the only matter of interest to the jury was the fact concerning his discharge and not the particular merits of the controversy.

But as we have previously observed, the question of bias or prejudice is only an additional reason for permitting these questions, as we have concluded they were proper on cross-examination to rebut the implication of the witness' continued good standing in railroad circles. We have thought it proper, however, to discuss the matter from the standpoint of the argument as to bias in view of the language of some of our cases and the earnest argument of counsel for plaintiff.

On this rehearing plaintiff lays much stress upon Pollard v. Crowder, 194 So. 161.[1] Counsel arguing here appears also to have been counsel in the Crowder case, yet on original consideration of this cause here counsel for plaintiff made no mention whatever of the Crowder case in answering defendant's argument upon these assignments of error and gave no indication it bore any relation to the questions.

It now appears one of the questions presented in the Crowder case was similar to one here in question and was disallowed. And counsel for plaintiff takes us to task for our failure to make note thereof.

The omission on part of plaintiff's counsel, also counsel in the Crowder case, to

---

[1] 239 Ala. 112.

call the Crowder case to our attention as having any application to these assignments of error of course can serve no excuse to those of us concurring here who participated in that decision, and we plead no such defense. Perhaps were counsel familiar with all extenuating circumstances their criticism would have been less severe. The opinion in the Crowder case makes no specific reference to any such question and it is only disclosed by an examination of the original record. There were several rulings on evidence to which the general reference "plainly without merit" would have appropriate application. This particular question, however, must have escaped the notice of the author of the opinion and certainly was overlooked by the concurring members of the court. Though we think it deserved consideration and treatment, this is not to say it presented in that case reversible error. There was no reference there as to the witness being a member of the Brotherhood of Locomotive Engineers, which, as we have herein indicated, is a material differentiation. Nor was the testimony of Couch in that case nearly so important for plaintiff as in this. The inquiry related to only one road and the ruling thereon with practically no discussion and no accentuation of the matter before the jury.

Though the matters called for more serious treatment, we are unwilling to say that it was such as to present error to reverse.

Here these questions were proper as tending to contradict the implication of continued good standing as we have before stated, and other points of differentiation apart from this, which we need not repeat. We can readily understand the viewpoint of counsel for plaintiff and the vigorous dissent from the reasoning of this opinion. We have restudied the record and these questions in the light of able argument of counsel, but we find our minds still persuaded that the trial court in sustaining the objections of counsel for plaintiff has too narrowly restricted the cross-examination of this witness and this to the prejudice of the substantial rights of these defendants.

Being still so persuaded the application for rehearing will be denied.

Application overruled.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.

