36 So.2d 133

### LONG v. STATE.

### 4 Div. 21.

Court of Appeals of Alabama.

Feb. 24, 1948.

Rehearing Denied March 23, 1948.

E. O. Baldwin, of Andalusia, for appellant.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., and B. W. Simmons, Circuit Sol., of Andalusia, for the State.

BRICKEN, Presiding Judge.

This appellant (defendant) was indicted for the offense of manslaughter in the first degree, and upon the trial in the court below was convicted as charged. His punishment was fixed at five years imprisonment in the penitentiary. Judgment of conviction was duly pronounced and entered, from which this appeal was taken.

The evidence in this case, in support of the indictment, tended to show that the defendant was the driver of a taxicab that was hired in Crestview, Florida, to transport to Andalusia, Alabama, the deceased, Will Hawkins, his wife, Callie Hawkins, his daughter, Miss Mary Hawkins, and a sailor, Claude Lassiter, to whom Mary Hawkins was going to be married after reaching Andalusia. Also, that the defendant drove the taxi at a rapid rate of speed from Crestview to Beda Church in Covington County, Alabama, at or near which point, while traveling, according to witness Mary Lassiter, at a speed of 75 or 80 miles per hour, on November 24, 1946 (Sunday afternoon), he drove the taxi into the rear of a one and a half (1½) ton motor truck traveling in the same direction. The taxi as a result of the impact, swerved off of the road and ran down into the woods for the distance of 394 feet, from the point of the impact of the two vehicles. The collision caused the death of Will Hawkins, the deceased named in the indictment, who was at the time occupying the front seat with defendant-driver. Mrs. Callie Hawkins suffered fractures and other severe injuries.

Daniel E. Patterson, a witness for the the State, testified in substance, he was driving a 1½ ton truck on the right hand side of the road, at a speed of about 20 miles per hour, on a highway near Beda Church, in Covington County, Alabama, proceeding in the direction of Andalusia, Alabama, when, on a straight road for a distance of one-quarter of a mile back, the truck was hit on the rear by the automobile occupied by Will Hawkins and others and driven by the defendant. The truck driven by the witness, at the time of the impact, went off the blacktop on the right. The car upon which Mr. Hawkins was riding suffered damages as follows: "Just stripped the top of the motor off, the carburetor and fuel pump and all, and the cross piece of the truck hit the dash and carried it back against him (Mr. Hawkins) in the seat." The inside dual wheel (of the truck) was split "about that long." The truck suffered the following damage: "Knocked the cross back member out and broke the cable to the battery and that tire and knocked the radiator, the hose, off of it * * * Jarred them loose."

Mrs. Callie Hawkins testified she and her husband, daughter and prospective son-in-law got on the car with the defendant at Crestview, Florida, to come to Andalusia, Alabama, as fare paying passengers. She "imagined" it was somewhere around 2 o'clock when they left Crestview, and at the time of the collision, the taxicab was running "awful fast." Mr. Will Hawkins, her husband, was sitting on the front seat with the defendant and the others, including witness, were on the back seat. When she saw the truck ahead of them, "It was going gradually, about truck speed, you know," and did not stop. Witness received injuries in the wreck—"I have a broken leg here, and my hip was broken, and this leg. My husband asked him (defendant) to slow down. * * * Lassiter asked him just a short while after we left Crestview to slow down. He said, 'Slow up, driver. We are in a hurry, but slow down.' And Lassiter said, 'I am going to get married and we want a two-way trip.' That was coming out of Crestview. Defendant speeded there. When we were two miles the other side of Wing, my husband asked him to slow down. Defendant was driving fast. If he slowed down I couldn't tell it. He kept coming fast, and maintained that speed right on until we hit the truck."

Witness also testified that if defendant turned a bit to go around the truck, she couldn't tell it. The defendant drove fast all the way from Crestview to the point of collision.

Mrs. Mary Lassiter testified the collision occurred about two miles "this side of Wing" (between Andalusia and Wing), and at the time, the defendant was driving the car, a Ford, at a speed of about 75 or 80 miles per hour and that her father, Will Hawkins, got hurt and died. "They had to take a pole and prize him (Will Hawkins) out." His body was crushed. The truck into which the taxicab was driven was traveling about 20 or 25 miles per hour, and was not stopped. "The boy that I was going to marry said, 'please don't drive so fast, I want this a two-way trip.' My father told him 'please not to drive so fast.' Right the other side of Wing my father told him about driving so fast again. He drove fast from Crestview to the point he hit the truck."

The defendant testified in his own behalf and denied that any of his passengers asked him "to slow down," and stated, at the time of the accident he was driving about fifty miles an hour.

There were some other conflicts in the evidence, which of course were for the jury to consider and determine.

The trial court delivered a full, complete and comprehensive oral charge to the jury. The following sections of "Rules of the Road," of Alabama Code 1940, Title 36, Sections 3, 5, 12, 13, 14, 35 and 36 are specially applicable to the case at bar, and under the evidence in this case the jury were fully warranted in returning its verdict, upon which the judgment of conviction is predicated. Section 3 is as follows:

"Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving."

Section 5. "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb, or property of any person."

Section 12. "The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

"The driver of an overtaking motor vehicle not within a business district as herein defined shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction. Any person violating any of the provisions of this section, shall be guilty of a misdemeanor."

Section 13. "The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety.

"The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of five hundred feet."

Section 14. "The driver of a vehicle upon a highway about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right in favor of the overtaking vehicle on suitable and audible signal being given by the driver of the overtaking vehicle, and when overtaken shall not increase the speed of his vehicle until completely passed by the overtaking vehicle. Any person violating this section shall be guilty of a misdemeanor."

Section 35. "Every motor vehicle when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, including two separate means of applying the brakes, each of which shall be effective to apply the brakes to at least two wheels and so constructed that no part which is liable to failure shall be common to two, except that a motorcycle need be equipped with only one brake. All such brakes shall be maintained in good working order and shall conform to regulations not inconsistent with this section to be promulgated by the highway director. Any person violating this section shall be guilty of a misdemeanor."

Section 36. "Every motor vehicle when operated upon a highway shall be equipped with horn in good working order capable of emitting a sound audible under normal conditions for a distance of not less than two hundred feet. It shall be unlawful for any vehicle to be equipped with or for any person to use upon a vehicle any siren or for any person at any time to use a horn otherwise than as a reasonable warning or to make any unnecessary or unreasonably loud or harsh sound by means of a horn or other warning device."

■ As we see it the jury was justified in the verdict rendered, under the testimony of the defendant himself, which evidence had no tendency to show that he had complied with the provisions of all, or any of the above quoted statutes.

■ The physical facts adduced upon the trial tended to sustain the evidence given by State witnesses Mrs. Hawkins, and that of her daughter, Mrs. Lassiter, wife and daughter, respectively, of deceased. That each of said witnesses had a natural interest in this case, can easily be understood and be considered by the jury in its deliberations. If there was any error in the ruling of the court in the attempt of defendant to show other and further interest in giving their testimony, such error, if any, would be rendered innocuous under provision of Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, which provides: "Hereinafter no judgment may be reversed or set aside, nor new trial

granted by this court or by any other court of this state, in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken, or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

■ The range of cross-examination rests largely in the discretion of the trial court, and the trial court's ruling thereon will not be revised on appeal unless it is made clearly to appear that error intervened to the prejudice of the objecting party. Louisville & N. R. Co. v. Martin, 240 Ala. 124, 198 So. 141. See also Newton v. State, 32 Ala.App. 640, 29 So.2d 353, 354, wherein the court said:

■ "On appeal a reversal will not be charged on grounds of improper admission or rejection of evidence unless, in the opinion of the appellate court, after examination of the entire evidence, it appears that the errors complained of have probably injuriously affected substantial rights of defendant."

From what has been said, it follows that the two insistences of error of appellant in order to reverse the judgment of conviction cannot be sustained.

Affirmed.